GATES, O'DOHERTY, GONTER & GUY, LLP
Thomas A. Scutti, Cal. Bar No. 137433
Lisa Torres, Cal. Bar No. 137945
15373 Innovation Drive, Suite 170
San Diego, California 92128
Telephone: (858) 676-8600
Facsimile: (858) 676-8601
Email: ltorres@gogglaw.com

Attorneys for creditors Nicole Goldman and Jasmin Ismail

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA-LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>TODD GOLDMAN<br><br>        Debtor and Debtor-In-Possession | Case No. 2:16-BK-11330-BR<br><br>Chapter 11<br><br>**NICOLE GOLDMAN AND JASMIN ISMAIL'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO CONVERT DEBTOR'S CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § § 305 AND 1112 AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; AND DECLARATION OF NICOLE GOLDMAN IN SUPPORT THEREOF**<br><br>Hearing Date: April 26, 2016<br>Time:        2:00<br>Dept:        Courtroom 1668<br>            225 E. Temple Street<br>            Los Angeles, CA 90012 |

Nicole Goldman ("N. Goldman") and Jasmin Ismail ("J. Ismail") (collectively Movants), hereby file this Motion pursuant to 11 U.S.C. § 1112(b) and 11 U.S.C. § 305 to Dismiss, or in the alternative, to Convert Debtor's Chapter 11 Case ("the Motion to Dismiss or Convert") and in support thereof, respectfully state as follows:

///

///

///

1

# TABLE OF CONTENTS

Page(s)

I.  MOTION ............................................................................................................................ 2

II.  FACTUAL BACKGROUND .......................................................................................... 3

III.  LEGAL ARGUMENT ................................................................................................... 8

A.  "Cause" Exists to Dismiss or Convert Debtor's Case Under 11 U.S.C. ¶112(b) ...................... 8

    1.  Debtor's Failure to Pay N. Goldman's Domestic Support
       Obligations is Cause to Dismiss or Convert Debtor's Case
       Under 11 U.S.C. § 1112(b)(4)(P) ........................................................................ 9

    2.  Continuing Loss to or Diminution of the Estate and the Absence
       of a Reasonable Likelihood of Rehabilitation is Cause to Dismiss or
       Convert under 11 U.S.C. § 1112(b)(4)(A)........................................................... 11

    3.  Debtor's Gross Mismanagement is Cause to Dismiss or Convert Debtor's
       Case Under 11 U.S.C. § 1112(b)(4)(B). ............................................................. 14

    4.  Debtor's Failure to Maintain Appropriate Insurance that Poses a Risk to
       the Estate is Cause to Dismiss or Convert Debtor's Case Under 11 U.S.C.
       § 1112(b)(4)(C)................................................................................................... 15

    5.  Cause Exists to Dismiss or Convert Debtor's Case as a Bad Faith Filing. ............... 15

       a.  Debtor's Violation of the Bankruptcy Code and his Use of the
          Bankruptcy Process to Impede the Dissolution Proceeding and to
          Process to Obtain a Tactical Advantage in Pending State Court Litigation
          is Grounds for Dismissal or Conversion.......................................................... 16

       b.  Debtor's False Statements and Omissions in His Bankruptcy Schedules,
          Statements and Pleadings is Evidence of Bad Faith.................................... 20

       c.  Debtor Has No Realistic Ability to Confirm a Chapter 11 Plan............................ 25

       d.  Dismissal is in the Best Interest of the Debtor and Creditors......................... 25

       e.  Movants are Entitled to Recover Sanctions Against the Debtor
          and his Counsel Based on Debtor's Bad Faith Filing.................................. 27

B.  The Court Should Abstain Under 11 U.S.C. § 305.............................................................. 28

    1.  Debtor's Case Serves No Bankruptcy Purpose ...................................................... 28

    2.  On the Petition Dates, There are Two Pending State Law Proceedings..................... 29

    3.  The State Court is Better Suited to Determine the Division of
       Property an Alleged Fraudulent Conveyance Claims.............................................. 29

i

4.    Efficiency and Economy of Administration Favor Abstention ...................................... 30

5.    The Case is Essentially a Two-Party Dispute............................................................. 30

IV.    CONCLUSION ................................................................................................................ 31

ii

# TABLE OF AUTHORITIES

## Cases

*Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.),* 749 F.2d 670 (11th Cir.1984)...... ..15

*Eastman v. Eastman (In re Eastman),* 188 B.R. 621, 624 (9th Cir. B.A.P. 1995) ............................... 28

*In re Ameribuild Const. Mgt., Inc.,* 399 B.R. 129 (Bankr. S.D.N.Y. 2009) ............................................ 9

*In re Cummings,* 523 B.R. 93 (Bankr. W.D. Mich. 2014) ............................................................ 20

*In re Dryja,* 425 B.R. 608 (Bankr. D. Colo. 2010) ........................................................................ 29

*In re Effron,* 535 B.R. 516 (Bankr. D. Puerto Rico 2014) ..................................................... 2,10, 11

*In re Engel,* 124 F.3d 567 (3d Cir. 1997)................................................................................... 19

*In re FRGR Managing Member, LLC,* 419 B.R. 576 (Bankr. S.D. N.Y. 2009) ............................... 11, 13

*In re Gannon Intern., Ltd.,* 528 B.R. 906 (E.D. Missouri 2015) ...................................................... 27

*In re Larson-Asplund,* 519 B.R. 682 (Bankr. E.D. Mich. 2014)...................................................... 20

*In re Lewis, 113 F.3d 1040, 1046 (9th Cir.1997)* .......................................................................... 19

*In re Maggaro,* 84 B.R. 803 (Bankr. M.D. Fla. 1988).................................................................. 13

*In re Marsch,* 36 F.3d 825 (9th Cir. 1994)............................................................................ 15, 27

*In re Mattick,* 469 B.R. 792 (Bankr. W.D. N. Ca. 2013)............................................................... 20

*In re Mense,* 509 B.R. 269 (Bankr. C.D. Cal. 2014)......................................................... 11, 15, 25, 26

*In re Nichols,* 223 B.R. 353 (Bankr. N.D. Okla. 1998) ................................................................ 20

*In re Rheuben,* 121 B.R. 368............................................................................................... 19

*In re Robbins,* 964 F.2d 342, 345 (4th Cir.1992)....................................................................... 30

*In re Sanchez,* 429 B.R. 393 (Bankr. D.P.R. 2010) .................................................................... 10

*In re SB Properties, Inc.,* 185 B.R. 206 (Bankr. E.D. Pa. 1995) .................................................... 16

*In re Sherman,* 2009 WL 1607856 (Bankr. D. Ariz. 2009)......................................................... 16, 31

*In re Silberkraus,* 253 B.R. 890 (Bankr. C.D. Cal. 2000), aff'd, 336 F.3d 464 (9th Cir. 2003)...... 16, 27

*In re Sunnyland Farms, Inc.,* 517 B.R. 263 (Bankr. D.N.M. 2014) .................................................... 14

*In re Van Eck*, 425 B.R. 54 (Bankr. D. Conn. (2010) ................................................................ 31

*Law Offices of Miriam G. Altman, P.C. v. Johnson*

    *(In re Johnson)*, 445 B.R. 50  (Bankr. D. Mass. 2011) .......................................................... 10

*Mac Donald v. Mac Donald (In re MacDonald)*, 755 F.2d 715 (9th Cir. 1985) ............................ 29, 30

*Marriage of Hamer*, 81 Cal.4th 712,  97 Cal. Rptr. 2d 195 (2000) .......................................... 9

*Mitan v. Duval (In re Mitan)*, 573 F.3d 237 (6th Cir. 2009) ................................................... 8

*Nelson v. Meyer (In re Nelson)*, 343 B.R. 671 (9th Cir. B.A.P. 2006) ....................................... 8

*Owens v. Treiger (In re Owens)*, 552 F.3d 958 (9th Cir. 2009) ............................................... 16, 26

*Shulkin Hutton, Inc. P.S. v. Treiger (In re Owens)*, 552 F.3d 858 (9th Cir. 2009) ....................... 9

**Statutes**

11 U.S.C. § 101(14A) .......................................................................................................... 9

11 U.S.C. § 105 ................................................................................................................ 28

11 U.S.C. § 1112 ............................................................................................................... 2

11 U.S.C. § 1112(b) ................................................................................... 1, 8, 16, 17, 20, 31

11 U.S.C. § 1112(b)(4) ................................................................................................... 2, 10

11 U.S.C. § 1112(b)(4)(A) ................................................................................................. 11

11 U.S.C. § 1112(b)(4)(B) ................................................................................................. 14

11 U.S.C. § 1112(b)(4)(C) ................................................................................................. 15

11 U.S.C. § 1112(b)(4)(P) ............................................................................................ 2, 9, 10

11 U.S.C. § 1129(a)(14) ..................................................................................................... 11

11 U.S.C. § 305 ................................................................................... 1, 2, 10, 28, 31

11 U.S.C. § 327 ........................................................................................................ 2, 18, 19

11 U.S.C. § 364 ........................................................................................................ 2, 14, 18

**Rules**

Federal Rule of Bankruptcy Procedure 2016(b) .................................................................... 19

Rule 9011 .......................................................................................................................... 27

# I.

## MOTION

The Debtor and N. Goldman have been engaged in an extensively litigated and acrimonious divorce proceeding since October 28, 2014. During the marriage, N. Goldman's relatives financially assisted the Debtor and N. Goldman with several real estate transactions. N. Goldman's relatives have been dragged into the dissolution proceeding and into related state court litigation regarding the real estate transactions. Debtor filed his Chapter 11 petition initiating this bankruptcy case on February 2, 2016, three days before a critical hearing scheduled for February 5, 2016 in the Dissolution Proceeding. A hearing before the Family Court was scheduled for hearing on February 4, 2016, wherein N. Goldman requested an award of $200,000 in attorney fees payable to N. Goldman's family law attorneys. N. Goldman's attorneys' fee request, set for hearing on February 4, 2016, also sought an order from the Family Court authorizing the sale of real property jointly owned by the Debtor, N. Goldman and N. Goldman's mother. N. Goldman submits that Debtor's petition filing was filed to block the Family Court from ordering the sale of the jointly owned real property to pay N. Goldman's attorney fees. (See ¶ 15 of the Declaration of N. Goldman ("the N. Goldman Dec.").

Debtor's post-petition failure to comply with court orders and make the domestic support obligation payments is grounds for dismissal of his case under 11 U.S.C. § 1112(b)(4)(P). *In re Effron*, 535 B.R. 516 (D. Puerto Rico 2014) (Court denied individual Chapter 11 Debtor's request for stay of dismissal order based on Debtor's failure to pay domestic support obligations to his spouse). In addition, Debtor obtained a post-petition loan to pay his professionals without prior Bankruptcy Court approval required under 11 U.S.C. § 364 and he has employed counsel without prior Bankruptcy Court approval required under 11 U.S.C. § 327. Debtor's violation of the Bankruptcy Code and Bankruptcy Rules of Federal Procedure is cause for dismissal or conversion of the Debtor's case. Further, Debtor's inability to confirm a feasible plan within a reasonable period of time, his failure to maintain property insurance, his gross mismanagement of Estate assets, and his lack of good faith in filing the bankruptcy case are "cause" for dismissal under 11 U.S.C. § 1112(b)(4). Movants hereby respectfully move the Court to abstain from exercising jurisdiction over the Debtor's case under 11 U.S.C. § 305, or in the alternative, to dismiss or convert Debtor's case under 11 U.S.C. § 1112.

2

## II.

## FACTUAL BACKGROUND

1.    Debtor filed a Chapter 11 petition in the above-captioned Court on February 2, 2016 ("the Petition Date"). Debtor's petition was filed three days before a critical hearing scheduled for February 5, 2016 in the dissolution proceeding pending in the Superior Court of the State of California, County of Los Angeles, Case No. BD610-524 ("the Dissolution Proceeding"). (See ¶ 15 of the N. Goldman Dec.).

2.    Nicole Goldman ("N. Goldman") and the Debtor were married on April 13, 2011 and they have one minor child born in 2011.

3.    During N. Goldman's and the Debtor's marriage, Debtor told N. Goldman he was the owner of David and Goliath, Inc. ("D & G"). Debtor filed the Articles of Incorporation of D & G on January 26, 2000 and is listed as the incorporator, agent for receipt of process and director of the company. (See Exhibit "A" to the Request for Judicial Notice ("RJN") filed herewith). Debtor was a fifty percent (50%) shareholder in D & G. During the period of 2000 to April 18, 2014, the Debtor is listed as the Director and President of D & G on the annual reports filed with the Florida Secretary of State. (See Exhibit "B" to the RJN filed herewith). After the Dissolution Proceeding was filed, Debtor purportedly terminated his interest in D & G. The March 13, 2015 annual report for D & G shows that Debtor's brother is the president of D & G and the Debtor is not an officer or director. (See Exhibit "C" to the RJN filed herewith). N. Goldman is informed and believes the Debtor has a continuing interest in D & G and that he continues to receive unreported income from D & G. (See ¶5 of the N. Goldman Dec.).

4.    Debtor's Statement of Affairs shows that in the last two years his annual earnings have averaged approximately $100,000. (Doc. 12, p. 33). However, Debtor's earnings are likely substantially understated. During N. Goldman's marriage to the Debtor, the Debtor was the primary earner. N. Goldman and the Debtor maintained properties in California and Florida. Their average living expenses were approximately $50,000 per month ($600,000 per year). A true and correct copy of the breakdown of activity on their joint Chase checking account for the period from August 2013 to October 2014 is attached as C to the N. Goldman Dec. During the marriage, Debtor paid the

1    monthly expenses primarily through their American Express account which he paid on a current

2    basis. During the marriage, the Debtor never asked N. Goldman to reduce her spending. When their

3    bank accounts were running low, Debtor would call his father, who then transferred money to their

4    account. Sometimes, Debtor spoke of money being wired to their account by "Ronnie in New York,"

5    whom N. Goldman understood to be Ron Berman who handled the Debtor's finances. (¶5 of the N.

6    Goldman Dec.). Documents produced pursuant to a subpoena by J.P. Morgan Chase bank where

7    Debtor held three brokerage accounts, reveal that in August 2013, Debtor stated his annual income

8    was over $400,000 and his occupation was President of D & G. (See Exhibit D to the N. Goldman

9    Declaration). Further, documents produced by Chase provide that in May 2005, Debtor stated his

10    annual income was over $1,000,000, that his net worth was $2,000,000, and that the source of his

11    wealth was his employment as President of D & G. (See Exhibit E to the N. Goldman Declaration).

12    Additional documents produced pursuant to subpoena by TD Ameritrade, where Debtor held an

13    account, reveal that in November 2013, Debtor stated his annual income was over $250,000 and his

14    occupation was Officer of D & G. Debtor stated that his net worth was between $1,000,000 and

15    $1,999,999. (See Exhibit F to the N. Goldman Declaration). In December 2014, Debtor completed

16    what appears to be a housing application in which he stated his gross monthly income from D & G

17    was $20,000. N. Goldman is informed and believes the Debtor has been hiding his income since she

18    filed the Dissolution Proceeding to evade his support obligations. (See ¶5 to the N. Goldman

19    Declaration). Given Debtor's past earning history, N. Goldman believes the Debtor has earning

20    capacity in the range of $100,000 to $600,000 per year. (See ¶5 of the N. Goldman Dec.).

21        5.    Debtor's mother, Lenore Goldman ("L. Goldman") owned real property located at 565

22    Bayview Drive, Belleair, Florida 33756 ("the Bayview Property"). L. Goldman was an obligor on a

23    secured loan encumbering the Bayview Property; the secured loan had a principal balance of

24    approximately $553,329.52 on September 12, 2014 ("the Bayview Secured Loan"). In or about

25    September 2014, when N. Goldman sought to liquidate or transfer her ownership in the Bayview

26    Property, Debtor and N. Goldman obtained financial assistance from N. Goldman's mother, Jasmin

27    Ismail ("J. Ismail") to acquire the Bayview Property. J. Ismail paid off L. Goldman's Bayview

28    Secured Loan in the amount of $553,329.52. In consideration for J. Ismail's payment, on September

4

1    12, 2014, L. Goldman as grantor, conveyed her interest in the Bayview Property to: Debtor and N.

2    Goldman as husband and wife, as to a fifty percent (50%) interest; and J. Ismail, a single woman, as

3    to a fifty percent (50%) interest. A true and correct copy of the Quitclaim Deed is attached as Exhibit

4    "A" to the N. Goldman Dec.

5          6.      In or about June 2014, the Debtor desired to purchase a home located at 4672

6    Brewster, Tarzana, California 91356 ("the Brewster Property"). The purchase price for the Brewster

7    Property was approximately $1,300,000. N. Goldman's relatives, Hasan Ismail ("H. Ismail") and

8    Nasim Ismail ("N. Ismail") agreed to purchase the Brewster Property and to rent the property to

9    Debtor and N. Goldman for $5,500 per month until the Debtor and N. Goldman had sufficient funds

10    to purchase the Brewster Property. The Debtor and N. Goldman contributed $250,000 towards the

11    $1,300,000 purchase price of the Brewster Property. True and correct copies of the $250,000 from N.

12    Goldman and the Debtor is attached hereto as Exhibit "B" to N. Goldman's Declaration. Following

13    the filing of the Dissolution Proceeding, Debtor has not paid the $5,500 monthly rent due H. Ismail

14    and N. Ismail. The Brewster Property was the custodial home of the Debtor's and N. Goldman's

15    minor daughter. N. Goldman moved out of the Brewster Property recently and has filed a motion in

16    the Dissolution Proceeding seeking authority to move out-of-state with her daughter. N. Goldman, H.

17    Ismail and N. Ismail would like to sell the Brewster Property and use the sale proceeds to pay the

18    Debtor and N. Goldman for their $250,000 contribution. Debtor now claims the $250,000

19    contribution is his separate property. To date, Debtor's refusal to remove the *lis pendens* he filed

20    against the Brewster Property in December 2014 has prevented H. Ismail and N. Ismail from selling

21    the Brewster Property. (¶ 3 of the N. Goldman Dec.). Debtor has improperly scheduled the

22    Brewster Property as property of his bankruptcy estate. Debtor is not on title to the Brewster

23    Property and has no ownership interest in the Brewster Property. (¶ 3 of the N. Goldman Dec.).

24          7.      On October 28, 2014, Nicole Goldman filed a dissolution of marriage action in the

25    Superior Court of the State of California, County of Los Angeles, Case No. BD610-524 ("the

26    Dissolution Proceeding"). (¶ 6 of the N. Goldman Dec.).

27    ///

28    ///

8.      On November 4, 2014, the Court in the Dissolution Proceeding issued a Domestic Violence Temporary Restraining Order ("the November 2014 DVTRO") against the Debtor. (¶ 3 of the N. Goldman Dec.).

9.      On November 26, 2014, N. Goldman and the Debtor entered into a Stipulation and Order Regarding Personal Conduct Orders and Support ("the November 2014 Support Stipulation and Order"). (See Exhibit "E" to the RJN filed herewith). The November 2014 Support and Stipulation Order provided in relevant part that commencing on December 1, 2014, and continuing until further order of the Court or written agreement of the Parties, the Debtor shall pay N. Goldman $4,000 per month as temporary support and that he shall also pay rent ($5,500 per month), utilities and property maintenance (approximately $1,800 per month), N. Goldman's car payment ($600 per month), their daughter's school tuition (approximately $700 per month) and health insurance coverage for N. Goldman and their daughter. Debtor was represented by Alexandra Lavinsky, Esq. when the November 2014 Support Stipulation and Order was entered. (¶ 8 of the N. Goldman Dec.).

10.      On February 11, 2015, N. Goldman filed a Request for Order for Attorney Fees and Costs in the Dissolution Proceeding. The matter was heard on June 30, 2015. On August 12, 2015, the Court in the Dissolution Proceeding ordered the Debtor to pay the sum of $65,000 to N. Goldman's counsel Brot & Gross, LLP ("the August 2015 Fee Order"). Debtor was represented by Ali Fishbein, Esq. of Buter, Buzard, Fishbein & Royce, when the August 2015 Fee Order was entered. (See Exhibit "G" to the RJN filed herewith). Debtor has not made any payments to Brot & Gross required by the Fee Order. (¶ 9 of the N. Goldman Dec.).

11.      In March 2015, Debtor filed a request to modify support. The Debtor's request to modify support filed in March 2015 was dismissed because the Family Court deemed it as moot at the hearing on September 17, 2015. The order after hearing was filed October 16, 2015. A true and correct copy of the October 16, 2015 order is attached as Exhibit "I" to the RJN. At the September 17, 2015 hearing, the Family Court stated that the April 6, 2015 and November 24, 2014 Support Orders and Stipulations (collectively "the Support Orders") remained in full force and effect. A true and correct copy of the transcript of hearing from the September 17, 2015 hearing is attached as Exhibit "H" to the RJN.

6

12.    On April 6, 2015, the Debtor and N. Goldman reaffirmed the Support Orders contained in the November 26, 2014 Stipulation and Order in a further Stipulation and Order dated April 6, 2015. A true and correct copy of the April 2015 Stipulation and Order is attached as Exhibit "J" to the N. Goldman Dec.

13.    On September 28, 2015, Debtor re-filed a request to modify support. (¶18 of the N. Goldman Dec.).

14.    The Debtor has not paid the amounts required by the Support Orders. Debtor also terminated a life insurance policy for the benefit of his daughter required by the Support Orders and violated the DVTROs. (¶23 of the N. Goldman Dec.).

15.    On November 25, 2015, N. Goldman filed a Request for Attorney Fees and Costs in the Dissolution Proceeding which was set for hearing on February 5, 2016 ("the November 2015 Motion"). N. Goldman's November 2015 Motion requested that the Court order the Debtor to pay at least an additional $200,000 as a contributive share of N. Goldman's attorney fees and costs and that the Court in the Dissolution Proceeding order the sale of the Bayview Property, the parties' proceeds of which would be used for the payment of the Court's August 2015 Fee Orders well as an additional fee order pursuant to the Request. (¶ 20 of the N. Goldman Dec.).

16.    Prior to the Petition Date, the Debtor had not paid the amounts and obligations due under the Support Orders and the Fee Orders issued in the Dissolution Proceeding. N. Goldman calculates that Debtor has failed to pay as of the Petition Date totals approximately $115,746.60. When the attorney's fees awarded to N. Goldman as support are included, the amount exceeds the $180,000. (¶ 11 of the N. Goldman Dec.). Following the Petition Date, Debtor has not paid the amounts due on March 1, 2016 under the Support Orders and Fee Orders. Id.

17.    Debtor's Schedules demonstrate that the Debtor's creditors are primarily connected to the Dissolution Proceeding and the Debtor's litigation with N. Goldman and her family. Creditors Felicia Myers (scheduled at $70,000); J. Marc. Dion (scheduled at $12,000); Ali Fishbein (scheduled at $8,500) and Alexandra Levinsky (scheduled at $800) represented the Debtor in the Dissolution Proceeding. Lisa Hacker (scheduled at $300) is an unpaid family therapist the Debtor was ordered to see by the Family Court. Ilene Fletcher (scheduled at $1,480) is an unpaid professional monitor for

7

1  visitations to Debtor's and N. Goldman's minor daughter.  Bruce Lorman (scheduled at $15,000) is

2  the attorney Debtor hired to file the Brewster Property Action.  N. Goldman is improperly scheduled

3  with a claim in the amount of $22,000; the amount of her unpaid spousal support, not including

4  attorneys' fees, totals approximately $116,000 as of the Petition Date.  Ron Brot, N. Goldman's

5  attorney, is scheduled with a claim in the amount of $65,000.  Jasmin Ismail, N. Goldman's mother,

6  is scheduled as a creditor with a $100,000 claim.  (¶ 27 of the N. Goldman Dec.).

7          18.      On March 2, 2016, due to Debtor's petition filing, enforcement of the Fee Orders is

8  stayed.  As a result, N. Goldman cannot pay her counsel in the Dissolution Proceeding and her

9  counsel filed a Substitution of Attorney.  (See Exhibit "O" to the RJN filed herewith).  N. Goldman is

10  currently *pro per* in the Dissolution Proceeding.

11          19.      On March 28, 2016, N. Goldman received ex parte notice from Mr. William W.

12  Oxley, Esq., that he was appearing on behalf of the Debtor at an ex parte hearing on March 29, 2016

13  in the Dissolution Proceeding to move the hearing.   N. Goldman appeared at the ex parte hearing in

14  *pro per*.  Debtor falsely represented to the Family Court judge who was hearing ex parte matters on

15  March 29, 2016 that the Bankruptcy Court could not make a final ruling on the Emergency Loan

16  (which was denied on March 23, 2016) (See Exhibit "Q" to the RJN) until the Family Court ruled on

17  spousal support.  The Family Court Judge who heard the ex parte matter granted Debtor's ex parte

18  request to set the hearing for modification of spousal support for April 19, 2016.

19                                                              **III.**

20                                                **LEGAL ARGUMENT**

21      **A.      "Cause" Exists to Dismiss or Convert Debtor's Case Under 11 U.S.C. § 1112(b).**

22          Section 1112(b)(1) of the Bankruptcy Code provides in relevant part that "... the court shall

23  convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter,

24  whichever is in the best interests of creditors and the estate, for cause ...."  If cause is established by

25  the moving party, the decision whether to convert or dismiss the case falls within the sound discretion

26  of the court. *Mitan v. Duval (In re Mitan)*, 573 F.3d 237, 247 (6th Cir. 2009); *Nelson v. Meyer (In re*

27  *Nelson)*, 343 B.R. 671, 675 (9th Cir. B.A.P. 2006) (chapter 13 case). And, if a bankruptcy court

28  determines that there is cause to convert or dismiss, it must also: (1) decide whether dismissal,

1   conversion, or the appointment of a trustee or examiner is in the best interests of creditors and the

2   estate; and (2) identify whether there are unusual circumstances that establish that dismissal or

3   conversion is not in the best interests of creditors and the estate. *Shulkin Hutton, Inc. P.S. v. Treiger*

4   *(In re Owens)*, 552 F.3d 858, 961 (9th Cir. 2009).

5       **1.    Debtor's Failure to Pay N. Goldman's Domestic Support Obligation Is Cause to**

6            **Dismiss or Convert Debtor's Case Under 11 U.S.C. § 1112(b)(4)(P).**

7       Section 1112(b)(4) of the Bankruptcy Code contains sixteen examples of events that constitute

8   cause for dismissal.  The list is not exhaustive and courts are free to consider other factors. *In re*

9   *Ameribuild Const. Mgt., Inc.*, 399 B.R. 129, 131 n. 3 (Bankr. S.D.N.Y. 2009). One of the express

10  statutory grounds for cause to dismiss or convert a Chapter 11 case is: "failure of the debtor to pay any

11  domestic support obligation that first becomes payable after the date of the filing of the petition."  11

12  U.S.C. § 1112(b)(4)(P*)*.

13      Under the binding Support Orders, Debtor is obligated to pay N. Goldman $4,000 per month

14  and to pay rent ($5,500 per month), utilities and property maintenance (approximately $1,800 per

15  month), N. Goldman's car payment ($600 per month), their daughter's school tuition (approximately

16  $700 per month) and health insurance coverage for N. Goldman and their daughter. On September 28,

17  2015, Debtor re-filed a request to modify support.  Despite Debtor's modification request, the Support

18  Orders remain in full force and effect until modified or revoked by the Family Court, terminated by

19  operation of law, or superseded by a permanent support order upon entry of judgment in the action.

20  *Marriage of Hamer*, 81 Cal.4th 712, 717, 97 Cal. Rptr. 2d 195 (2000).   A modification may only be

21  made retroactive to the date of filing the notice of motion or order to show cause.  Family Code §

22  3603.  In fact, a Court order permitting a future retroactive modification is voidable, as an act in excess

23  of its jurisdiction. (*Marriage of Murray,* 101 Cal.App.4th 581 (2002).

24      There is no question that the amounts due to N. Goldman under the Stipulation and Orders

25  dated November 26, 2014 and April 6, 2014 are "Domestic Support Obligations" ("DSO") under 11

26  U.S.C. § 101(14A).  Section 101(14A) defines a DSO as a debt that accrues before, on, or after a

27  debtor's petition date, including interest, owed to or recoverable by a spouse, former spouse, or child

28  of the debtor or such child's parent, legal guardian, or responsible relative, in the nature of alimony,

9

1    maintenance, or support (including assistance provided by a governmental unit) of such spouse, former

2    spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly

3    so designated.

4        Further, it is undisputed that Debtor has not paid the amounts due post-petition under the

5    Support Orders. Debtor's Supplemental Declaration shows that the Debtor paid N. Goldman $100 in

6    February 2016 and $100 in March 2016 (Doc. 35). N. Goldman states she has not received the $200

7    Debtor alleges he sent her post-petition. (¶ 9 of the N. Goldman Dec.). In any case, $100 per month is

8    far less than the $11,500 to $12,600 monthly amount of support due N. Goldman that is required under

9    the Support Orders. Debtor's post-petition failure to pay N. Goldman's DSO is cause under 11 U.S.C.

10   § 1112(b)(4)(P) to dismiss or convert Debtor's case. *In re Effron*, 535 B.R. 516 (Bankr. D. Puerto

11   Rico 2014) (case was dismissed under 11 U.S.C. § 305 and 11 U.S.C. § 1112(b)(4)(P) based on

12   Debtor's failure to pay his Domestic Support Obligations).

13       Debtor's argument that section 1112(b)(4)(P) does not apply when the Debtor contests the

14   amount of an entered order by the State Court providing for child and spousal support award is not

15   supported by the plain meaning of the statute or by the legislative history. The 2005 amendments to

16   the Bankruptcy Code include as a public policy, payment of post-petition domestic support obligations

17   as a necessary requirement for individual debtors to enjoy bankruptcy protection. *Law Offices of*

18   *Miriam G. Altman, P.C. v. Johnson (In re Johnson)*, 445 B.R. 50, 59-60 (Bankr. D. Mass. 2011); *In re*

19   *Effron*, 535 B.R. 516 (Bankr. D. Puerto Rico 2014). Debtor's argument that § 1112(b)(4)(P) does not

20   apply when support amounts are contested would eviscerate § 1112(b)(4)(P)  and would provide a

21   means for debtors to end-run the public policy of protecting child support and spousal support

22   obligations in bankruptcy in cases by contesting the support obligation. Debtor's failure to pay N.

23   Goldman's DSO is sufficient cause alone to dismiss or convert Debtor's case. *In re Sanchez*, 429 B.R.

24   393 (Bankr. D.P.R. 2010) (one ground for cause under 11 U.S.C. § 1112(b)(4) alone is sufficient to

25   warrant dismissal or conversion of a Chapter 11 case).

26   ///

27   ///

28   ///

**2.**  **Continuing Loss to or Diminution of the Estate and the Absence of a Reasonable**
**Likelihood of Rehabilitation is Cause to Dismiss or Convert under 11 U.S.C. §**
**1112(b)(4)(A).**

Under 11 U.S.C. § 1112(b)(4)(A), "cause" exists to dismiss or convert a case when there is substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. There need not be significant diminution in the estate in order to justify dismissal. All that needs to be shown is that the Estate has suffered some diminution in value. *In re Mense*, 509 B.R. 269 (Bankr. CO Cal 2014). As to the first prong, Debtor's actions are causing a diminution to the Estate. Debtor is incurring quarterly U.S. Trustee's fees, legal fees and N. Goldman's unpaid post-petition priority support obligation, causing a continuing loss to the Estate. *In re FRGR Managing Member, LLC*, 419 B.R. 576, 581 (Bankr. S.D. N.Y. 2009) (continuing loss to the Estate established based on Debtor's unpaid U.S. Trustee's fees and legal fees).

As to the second prong, the Debtor has no reasonable likelihood of obtaining confirmation of a plan of reorganization within a reasonable time. First, in order to confirm a plan, 11 U.S.C. § 1129(a)(14) establishes as a necessary requirement for confirmation that the debtor be current in his post-petition Domestic Support Obligations. *In re Effron, supra*, 535 B.R. at 515. At the hearing on March 23, 2016, Debtor's counsel stated that the Debtor does not have the resources to pay N. Goldman's DSO.

In addition, based on the Debtor's financial disclosures filed in the Dissolution Proceeding and the Bankruptcy Court, Debtor lacks the regular income or other readily liquid property to fund a reorganization plan. Debtor's Schedule "I" states that he only has monthly income of $6,300. The operating report Debtor filed for the period ending on February 20, 2016 only shows receipts of $147.53, far less than the $6,300 in stated income. On Schedule "J" the Debtor states his monthly expenses are $15,211.42 and that he is operating at a deficit of $8,911.42 per month. Debtor's monthly operating deficit is really approximately $16,511 per month because Debtor inaccurately scheduled his spousal support obligation at $4,000 per month. Under the Support Orders, Debtor is currently obligated to pay support totaling approximately $11,600 per month. (See Exhibit "M" to the N. Goldman Dec.).

11

1      Moreover, according to Debtor's Schedules, his debt far exceeds his income. Debtor's

2  Summary of Assets and Liabilities shows real and personal property totaling $579,449.74 and total

3  liabilities in the amount of $750,798.37. (Doc. 12, p. 1). Debtor's Schedules inaccurately scheduled

4  N. Goldman with a priority claim in the amount of $22,000; she is owed support as of the Petition

5  Date exceeding $110,000. (¶ 9 of the N. Goldman Dec.). When N. Goldman's support obligation in

6  the amount of $115,000 ($115,000 - $22,000) is added, Debtor's unsecured debt totals approximately

7  $843,798.37 ($750,798.37 + $93,000).

8      The only significant asset the Debtor holds an undivided interest in is his real property located

9  at 548 Palmetto Road, Belleair Florida ("the Palmetto Property"). Debtor has scheduled the Palmetto

10  Property with a fair market value of $500,000. The Palmetto Property is encumbered by a a secured

11  loan payable to Cenlar in the amount of $298,000; $6,016.40 payable to Pinellas County for 2015 real

12  property taxes; $30,000 to Steven Ober for a debt incurred January 2016 . Thus, according to the

13  Debtor, the Palmetto Property has equity in the amount of approximately $165,000. Equity in the

14  amount of $165,000 from the Palmetto Property is not remotely sufficient to satisfy the Debtor's

15  liabilities of $843,798.37. (Doc. 12, p. 1).

16      As to the Bayview Property and the Brewster Property, Debtor's rightful share of equity in the

17  properties is disputed. Debtor and N. Goldman hold legal title to a fifty percent interest, as community

18  property, in the Bayview Property and J. Ismail holds a fifty percent interest in the Bayview Property.

19  Despite the quitclaim deed from Debtor's mother to Debtor, N. Goldman and J. Ismail, Debtor claims

20  a greater "equitable" interest in the Bayview Property. In the Dissolution Proceeding on August 17,

21  2015, Debtor's Income and Expense Declaration recognized that Debtor's interest in the equity in the

22  Bayview Property was limited to twenty-five percent (25%) and he listed the value of his interest at

23  $161, 668. (See Exhibit "I" to the N. Goldman Dec.). N. Goldman is informed and believes that the

24  Debtor's and N. Goldman's community interest in the Bayview Property is in the range of $323,335 to

25  $377,208, before closing costs. Thus, Debtor's fifty-percent interest in the likely net sale proceeds

26  from the Bayview Property totals approximately $161,667.50 to $188,604. (¶ 4 to the N. Goldman

27  Dec.).

28

1    Debtor also claims a reimbursement right in the amount of $250,000 to the Brewster Property.

2    Debtor claims the $250,000 contribution from the Brewster Property came from his separate property.

3    However, the $250,000 contribution to purchase the Brewster Property was wire transferred from N.

4    Goldman and the Debtor jointly.  (See Exhibit B to the N. Goldman Dec.).  Debtor's fifty percent

5    interest in the $250,000 contribution amount is $125,000.  Debtor's potential interest in the Bayview

6    Property in the maximum amount of $188,604 and his potential $125,000 interest in the Brewster

7    Property combined with the potential equity in the Palmetto Property in the amount of $165,000,

8    without considering litigation costs and sale costs, totals $478,604.  Debtor's scheduled unsecured

9    debts totaling $750,000 (accurately $843,798 when N. Goldman's Support Orders are considered) far

10   exceed the potential sale proceeds from the three properties totaling $478,604 without considering

11   costs of sale and litigation costs.

12       Because Debtor lacks the income and liquid assets to provide a return to his creditors, his

13   "plan" depends on the Debtor's ability to fund the litigation against N. Goldman and her family.

14   Debtor's "plan" premised on the potential recovery of lawsuits against N. Goldman and her family and

15   his plan to reduce his DSO, is not the foundation for a feasible plan of reorganization.  Courts have

16   found "cause" to dismiss or convert Chapter 11 cases when the Debtor's plan depends on the outcome

17   of litigation claims.  *In re Maggaro*, 84 B.R. 803 (Bankr. M.D. Fla. 1988); *In re FRGR Managing*

18   *Member, LLC*, 419 B.R. 576 (Bankr. S.D. N.Y. 2009) (cause for dismissal of Chapter 11 case existed

19   where debtor's primary asset was a contested litigation claim).

20       The futility of Debtor's Chapter 11 case is demonstrated by the fact the Debtor lacks the

21   income necessary to fund the required administrative expenses to pay for real property insurance.  On

22   March 3, 2016, Debtor filed an "Emergency Motion" to obtain interim and final orders authorizing the

23   Debtor to obtain a secured loan in the amount of $40,000 to pay administrative expenses, including

24   real property insurance, among other administrative expenses.  ("The Emergency Motion") (Doc. 20).

25   The Emergency Motion was denied on March 23, 2016.  Debtor's inability to fulfill his DSO

26   obligation and to pay the Estate's necessary administrative expenses and operating expenses such as

27   insurance, is further evidence that Debtor has no ability to reorganize.  Debtor's case was not filed for

28

13

1    a legitimate bankruptcy purpose.  Instead, Debtor's case was to re-hash the issues in the Dissolution

2    Proceeding and the collateral litigation with N. Goldman's family.

3        **3.    Debtor's Gross Mismanagement is Cause to Dismiss or Convert Debtor's Case**

4            **Under 11 U.S.C. § 1112(b)(4)(B).**

5        Under 11 U.S.C. § 1112(b)(4)(B), "cause" exists to dismiss or convert a case based on the

6    Debtor's gross mismanagement of the Estate. *In re Sunnyland Farms, Inc.,* 517 B.R. 263 (Bankr.

7    D.N.M. 2014).

8        In this case, the Debtor has demonstrated gross mismanagement of the Estate's assets.   On

9    March 4, 2016, Debtor filed the Emergency Motion seeking authorization under 11 U.S.C. § 364 to

10    obtain a short-term secured loan due and payable in September 2016 in the principal amount of

11    $40,000 to pay property insurance and professionals' fees.  The proposed secured loan required the

12    Debtor to pay total interest in the amount of $10,000, which amounts to an annual interest rate of fifty-

13    four percent (54%) and granted the secured creditor a security interest in all of the Debtor's artwork

14    (Doc. 20).  On March 11, 2016, N. Goldman filed Opposition to the Emergency Motion on a number

15    of grounds, including that Debtor's loan would not benefit the Estate and the terms of proposed loan

16    were not commercially reasonably, even for a debtor-in-possession.  (Doc. 28).  In response to N.

17    Goldman's Opposition, Debtor requested a continuance of the hearing on the Emergency Motion.

18    (Doc. 30).  On March 21, 2016, the Debtor proposed that the Court approve an entirely different loan

19    from a new lender on different terms.  (Doc. 35).  The new loan proposed that, in exchange for

20    $40,000 and interest at the rate of ten percent (10%), the $40,000 loan to the Debtor would be an

21    advance on future art royalties payable to the Debtor from Q-Art.  The new loan was allegedly

22    collateralized with art having a wholesale value of approximately $78,500.  Debtor's proposed

23    emergency loan was not approved at the hearing on March 23, 2016.  Debtor's proposed loans were

24    not reasonable and conferred no benefit to the Estate and the creditors. Debtor's unsuccessful effort to

25    obtain the emergency loans, and the Debtor's use of administrative resources to pursue the emergency

26    loans, is evidence of gross mismanagement of the Estate and cause for dismissal or conversion of his

27    Chapter 11 case.

28

**4.    Debtor's Failure to Maintain Appropriate Insurance that Poses a Risk to the Estate is Cause to Dismiss or Convert Debtor's Case Under 11 U.S.C. § 1112(b)(4)(C).**

Under 11 U.S.C. § 1112(b)(4)(C), "cause" exists to dismiss or convert a case based on the Debtor's failure to maintain appropriate insurance that poses a risk to the Estate. A Chapter 11 debtor's failure to maintain insurance on real property is cause for dismissal or conversion of the debtor's case. *In re Campbell-Erskins Apothecary, Inc.*, 302 B.R. 169 (Bankr. W.D. PA 2003). Debtor filed his Chapter 11 petition without the funds necessary to maintain insurance over Estate real property. (Doc. 20). As such, cause exists under 11 U.S.C. § 1112(b)(4)(C), to dismiss or convert the case.

**5.    Cause Exists to Dismiss or Convert Debtor's Case as a Bad Faith Filing.**

Good faith is required in the commencement and prosecution of a Chapter 11 case. *In re Mense*, 509 B.R. 269 (Bankr. C.D. Cal. 2014). Thus, lack of good faith is additional cause for the dismissal or conversion of a Chapter 11 case. *In re Marsch*, 36 F.3d 825 (9th Cir. 1994). Bankruptcy Courts devine whether a Chapter 11 case was filed in good faith based on an amalgam of factors rather than on any specific fact. *In re Mense*, 509 B.R. 269 (Bankr. C.D. Cal. 2014). The determination "depends largely financial condition, motives upon the bankruptcy court's on-the-spot evaluation of the debtor's, and the local financial realities." *Little Creek,* 779 F.2d at 1072. "In finding a lack of good faith, courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization provisions ... [p]articularly when there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.),* 749 F.2d 670, 674 (11th Cir.1984). Ultimately, "[t]he test is whether the debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis." *Marsch,* 36 F.3d at 828. The movant seeking dismissal on bad faith grounds has the initial burden of making a prima facie case in support of its allegation of bad faith. *In re Mense, supra,* 509 B.R. at 277. Once the showing has been made, the burden shifts to the Debtor to show good faith. *Id.* In this case, evidence supports the conclusion that the Debtor filed his case in bad faith to unreasonably deter enforcement of the DSO orders in the Dissolution Proceeding

15

1    and N. Goldman's pending request to sell the Bayview Property. Movants have established a *prima*

2    *facie* case that Debtor did not file his Chapter 11 case to effect a speedy, efficient and realistic plan of

3    reorganization.

4          **a.**      **Debtor's Violation of the Bankruptcy Code and his Use of the Bankruptcy Process**

5          **to Impede the Dissolution Proceeding and to Obtain a Tactical Advantage in**

6          **Pending State Court Litigation Is Grounds for Dismissal or Conversion.**

7          It constitutes bad faith for a Chapter 11 debtor to file a bankruptcy petition to impede, delay,

8    forum shop, or obtain a tactical advantage regarding litigation ongoing in a non-bankruptcy forum. *In*

9    *re Silberkraus*, 253 B.R. 890 (Bankr. C.D. Cal. 2000), aff'd, 336 F.3d 464 (9th Cir. 2003); *In re SB*

10    *Properties, Inc.*, 185 B.R. 206 (Bankr. E.D. Pa. 1995) (a two-party family dispute obviously

11    commenced for the sole purpose of relocating pending litigation over the liquidation from state court

12    to bankruptcy court was an obvious case of forum shopping and was properly dismissed as a bad faith

13    filing under 11 U.S.C. § 1112(b)). Most of the Debtor's unsecured debt is related to the Dissolution

14    Proceeding. (See ¶ 27 of the N. Goldman Dec.). The Debtor's alleged claims against N. Goldman and

15    her family are connected to the Dissolution Proceeding. *In re Sherman*, 2009 WL 1607856 (Bankr. D.

16    Ariz. 2009) (Chapter 13 case was a two-party dispute where the debtor's creditors primarily related to

17    the dissolution proceeding involving the debtor and his spouse; debtor's petition was dismissed as a

18    bad faith filing).

19          The Debtor filed his Chapter 11 petition initiating this bankruptcy case on February 2, 2016,

20    three days before a critical hearing scheduled for February 5, 2016 in the Dissolution Proceeding. A

21    hearing before the Family Court was scheduled for hearing on February 5, 2016, wherein N. Goldman

22    requested an award of $200,000 in attorney fees payable to N. Goldman's family law attorneys. N.

23    Goldman's attorneys' fee request, set for hearing on February 4, 2016, also sought an order from the

24    Family Court authorizing the sale of the Bayview Property. N. Goldman submits that Debtor's

25    petition filing was filed to block the Family Court from ordering the sale of the jointly owned real

26    property to pay N. Goldman's attorney fees. The petition filing to block the Family Court's sale order

27    is evidence of bad faith and grounds for dismissal or conversion of the Debtor's Chapter 11 case. *See,*

28    *Owens v. Treiger (In re Owens)*, 552 F.3d 958 (9th Cir. 2009) (debtor's Chapter 11 case, filed to block

1   the Family Court's ordered sale of real property, was properly dismissed under 11 U.S.C. § 1112(b)).

2          On March 2, 2016, the Debtor filed a Motion to Extend the Date by Which a Plan and

3   Disclosure Statement must be filed ("Debtor's Extension Motion"). (Do. 18).  In the Extension

4   Motion, Debtor's forum shopping is further evidenced by the Debtor's failure to disclose to this Court

5   in the Extension Motion that 1) there is a pending motion in the Dissolution Proceeding to sell the

6   Bayview Property; and 2) the Debtor already filed the Brewster Property Action on July 1, 2015.

7   Thus, the litigation claims that the Debtor seeks to adjudicate in the Bankruptcy forum, are already

8   pending in State Court.  This Court scheduled April 4, 2016 as the deadline for the Debtor to file a

9   Plan and Disclosure Statement.  The Debtor's Extension Motion seeks an extension of the Court's

10  deadline on the ground, among others, that the Debtor may seek to dismiss his Chapter 11 case before

11  he files a Disclosure Statement and Plan.  The Extension Motion states: "Finally, if settlement

12  discussions progress expeditiously, it may be possible to consummate a settlement which will allow

13  unsecured claims to be paid through a Motion to Dismiss the case without Debtor incurring the

14  significant fees required to prepare and file a Chapter 11 Disclosure Statement and Plan of

15  Reorganization.") (Doc. 18, p. 5, ll. 23-28).  Debtor's Extension Motion anticipates a dismissal of

16  Debtor's case following settlement of his claims against N. Goldman and her relatives.

17         Moreover, the Debtor is clearly abusing the bankruptcy process to obtain a tactical advantage

18  in the Dissolution Proceeding.  At the same time the Debtor seeks to put off filing a Disclosure

19  Statement and Plan.  The Debtor is aggressively seeking a modification of the Support Orders in the

20  Dissolution Proceeding.  After the Petition Date, on February 24, 2016, in connection with the

21  Debtor's request to modify the Support Orders, Debtor's attorney represented to the Family Court that

22  Debtor's family could pay for the child custody evaluator he requested.  (A true and correct copy of

23  the transcript of hearing is attached as Exhibit "N" to the RJN filed herewith).  On March 4, 2016, just

24  days later, the Debtor represented to this Court in the Emergency Motion that he needs $10,000 to pay

25  a custody evaluator and that no family member or other person would loan him the funds on an

26  unsecured basis. (Doc. 20).  On March 29, 2016, after the Court denied the Debtor's Emergency

27  Motion, Debtor stated his family loaned him the funds necessary to pay the child custody evaluator's

28  retainer in the amount of $7,500. (See Exhibit Q to the RJN).  Thus, Debtor made inconsistent

17

1    statements regarding his ability to pay a child custody evaluator in the Family Court and the

2    Bankruptcy Court.

3        On March 28, 2016, Ms. Goldman received an email from the legal assistant for William W.

4    Oxley providing ex parte notice on behalf of the Debtor that Mr. Goldman will be appearing Ex-Parte

5    on Tuesday, March 29, 2016 in the Dissolution Proceeding. In addition, Mr. Oxley's assistant advised

6    that the purpose of the Ex-Parte hearing is to request the court to advance the Debtor's Request for

7    Order re Modification of Support calendared for July 6, 2016 to April 19, 2016 and to Request an

8    order for shortening of time. A true and correct copy of the email Ms. Goldman received is attached

9    as Exhibit "N" to the N. Goldman Declaration. In the Debtor's ex parte request to modify support

10   filed in the Dissolution Proceeding on March 29, 2016, he misrepresented to the Family Court this

11   Court's ruling on the Debtor's Emergency Motion (which was denied by the Bankruptcy Court on

12   March 23, 2016). Debtor states the Court issued a tentative decision to deny his emergency loan and

13   that the Bankruptcy Court was holding up approving his loan to his request for modified support is

14   determined by the Family Court. In addition, Debtor's Declaration filed on March 29, 2016 in the

15   Family Court states: **"I recently borrowed money, by way of hard money loan and with a high**

16   **interest rate, out of desperation to pay for a custody evaluator and to retain family lawyers for**

17   **my upcoming move-away trial as I have no money in which to pay either."** (See Exhibit Q to the

18   RJN, pp. 1-3 of the Declaration of Todd Goldman in Support of His Request for a Temporary

19   Emergency Order). Debtor's Declaration filed March 29, 2016, confirms he obtained the post-

20   petition loan without prior Bankruptcy Court approval as required by 11 U.S.C. § 364 and he

21   employed counsel without Bankruptcy Court approval required by 11 U.S.C. § 327.

22       Mr. Oxley's post-petition representation of the Debtor is unauthorized and violates the

23   Bankruptcy Code and the Bankruptcy Rules of Federal Procedure. Debtor's breach of his fiduciary

24   duty to the Estate and the creditors by failing to comply with the Bankruptcy Code and Bankruptcy

25   Rules of Federal Procedure is further cause to dismiss or convert his case. Section 327(e) of the

26   Bankruptcy Code provides that the "trustee [debtor-in-possession], with the court's approval, may

27   employ for a special purpose, other than to represent the trustee [debtor-in-possession] in conducting

28   the case, an attorney that has represented the debtor, if in the best interest of the estate . . . ." Debtor's

18

1    Emergency Motion sought post-petition financing to pay, Mr. Oxley, among others, $10,000.  The

2    Emergency Motion was denied.  Based on the denial of the Emergency Motion, Movants presume that

3    Mr. Oxley is being paid by a third party to represent the Debtor.    Even if Mr. Oxley's fees are being

4    paid by a third party and not the Debtor, his employment must be approved by the Bankruptcy Court.

5    *In re Engel*, 124 F.3d 567, 571-572 (3d Cir. 1997); *In re Rheuben*, 121 B.R. 368, 385 (Bankr. C.D.

6    Cal. 1990) (chapter 11 debtor's law firm's fees were subject to disgorgement based on firm's failure to

7    have employment approved by the Bankruptcy Court under 11 U.S.C. § 327 and failure to file the

8    Bankruptcy Rule 2016 disclosure statement).  In *Engel*, the Court explained:

9
>    Even if compensation is to come from some source other than the estate,
10       employment of an attorney by the debtor-in-possession must be approved by the
>    Bankruptcy Court.  An attorney whose employment has not been approved under
11       § 327 can be required to return compensation for serviced provided to the debtor-
>    in-possession, even though they were paid by third parties and not the estate.  *In*
12       *re Engel, supra*, 124 F.3d at 571-572.

13       Section 329 of the Bankruptcy Code requires attorneys who are representing a debtor, or in

14    connection with the debtor's case to file a statement disclosing his or her fees. Section 329 is further

15    implemented by Federal Rule of Bankruptcy Procedure 2016(b):

16
17
>    Every attorney for a debtor, whether or not the attorney applies for
>    compensation, shall file and transmit to the United States trustee within 14 days
18       after the order for relief, or at another time as the court may direct, the statement
>    required by § 329 of the Code including whether the attorney has shared or
19       agreed to share the compensation with any other entity. The statement shall
>    include the particulars of any such sharing or agreement to share by the attorney,
20       but the details of any agreement for the sharing of the compensation with a
>    member or regular associate of the attorney's law firm shall not be required. A
21       supplemental statement shall be filed and transmitted to the United States trustee
>    within 14 days after any payment or agreement not previously disclosed.
22

23       Mr. Oxley was required to file a Rule 2016(a) statement with the Bankruptcy Court.  *In re*

24    *Gorski*, 519 B.R. 67 (Bankr. S.D.N.Y. 2014) (chapter 13 debtor's post-petition divorce attorney was

25    required to file a Rule 2016(a) statement disclosing the source of compensation irrespective that a

26    portion of the fees were paid by a third party).  *In re Lewis, 113 F.3d 1040, 1046 (9th Cir.1997)*

27    ("The bankruptcy court may order the disgorgement of any payment made to an attorney representing

28    the debtor in connection with a bankruptcy proceeding, irrespective of the payment's source.").  Mr.

1   Oxley's "limited scope" representation of the Debtor is not authorized by the Bankruptcy Code or the

2   Bankruptcy Rules.  Even if he is not being paid by the Debtor, Mr. Oxley is required to file a Rule

3   2016(a) statement and the Debtor must submit an application to employ Mr. Oxley.

4        The Debtor's violations of the Bankruptcy Code, the Bankruptcy Rules of Federal Procedure

5   and his inconsistent factual statements in the Bankruptcy case and in the Dissolution Proceeding are

6   evidence of Debtor's abuse of process and justifies dismissal or conversion of Debtor's case under 11

7   U.S.C. § 1112(b). Moreover, the Debtor's pre-petition history of not complying with the Family

8   Court's support orders in the Dissolution Proceeding is additional indicia of the Debtor's bad faith.

9   *See In re Cummings*, 523 B.R. 93 (Bankr. W.D. Mich. 2014) (Debtor's Chapter 13 case was

10  dismissed as a bad faith filing where motivation for the filing was modification of an adverse family

11  law judgment in state court); *In re Larson-Asplund*, 519 B.R. 682 (Bankr. E.D. Mich. 2014) (Debtor's

12  case was dismissed as a bad faith filing where Debtor had history of not paying support and filed his

13  petition after an adverse family court ruling); *In re Mattick*, 469 B.R. 792 (Bankr. W.D. N. Ca. 2013)

14  (Debtor's chapter 13 case was converted to Chapter 7 where the Debtor's primary purpose for the

15  filing was to evade support orders issued by the state court in a dissolution proceeding);(*In re*

16  *Nichols*, 223 B.R. 353 (Bankr. N.D. Okla. 1998) (Debtor's chapter 11 petition was dismissed on bad

17  faith grounds here Debtor's petition filing adversely impacted dissolution proceeding and enabled the

18  Debtor to evade family court contempt orders to pay alimony and child support).

19        **b.    Debtor's False Statements and Omissions in His Bankruptcy Schedules,**

20        **Statements and Pleadings is Evidence of Bad Faith.**

21        The Debtor's Schedules and Statement of Affairs are inaccurate, incomplete and are

22  inconsistent with the Debtor's financial disclosures in the Dissolution Proceeding.  Debtor's

23  incomplete, misleading and inconsistent financial disclosures are evidence of bad faith and are cause

24  for dismissal. *In re Mattlick*, 496 B.R. 792, 801 (Bankr. W.D. No. Co. 2013) (debtor's failure to file

25  accurate schedules is evidence of bad faith).  A summary of Debtor's financial disclosures is provided

26  below:

27  ///

28  ///

1    (i)    Debtor's May 27, 2015 Income and Expense Declaration (Exh. "H" to the N.

2         Goldman Dec.

3         Average monthly income:  $8,428.00

4         Average monthly expenses:  $25,028.00

5         Real Property and Personal Property Assets:  $700,000

6

7    (ii)   Debtor's August 17, 2015 Income and Expense Declaration (Exh. "I" to the

8         N. Goldman Dec.

9         Average monthly income: $5,438.00

10        Average monthly expenses: $26,929.00

11        Real Property and Personal Property Assets: $491,668

| | | | |
|---|---|---|---|
| Palmeto Property | Approximate Value: | $ | 400,000 |
| | Mortgage: | $ | 295,000 |
| | Realtor Fees on Sale: | $ | 25,000 |
| | Approximate Equity: | $ | 80,000 |
| | | | |
| Bayview Property | Approximate Value: | $1,200,000 | |
| | Amount Owed | | |
| | To J. Ismail | $ | 553,330 |
| | Total Equity | $ | 646,670 |
| | J. Ismail 50% Equity: | $ | 323,335 |
| | Debtor's Equity: | $ | 161,668 |
| | N. Goldman's Equity: | $ | 161,668 |

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

(iii)    Debtor's September 25, 2015 Declarations of Disclosure
(Exh. "J" to N. Goldman Dec.).

| | | | |
|---|---|---|---|
| Brewster Property | Approximate Value: | | $1,250,000 |
| | Amount Paid By N. Goldman's Family: | | $1,000,000 |
| | Amount Paid By Debtor: | | $  250,000 |
| | Debtor's Equity: | | $  250,000 |
| Bayview Property | Fair Market Value | | $1,000,000 |
| | Money Owed | | $  550,000 |
| Palmetto Property | Fair Market Value | | $  400,000 |
| | Encumbrance | | $  293,000 |
| Brewster Dr. | Fair Market Value | | $1,250,000 |
| | Amount Owed | | $1,000,000 |
| Art Florida: | | | $  100,000 |
| Art California: | | | $   20,000 |
| Watches: | | | $   20,000 |
| Stock Certificate (Genius Brand Int'l Inc.) | | | $   20,000 |

Total Assets:  $2,652,194 (amount owed or encumbered $1,913,000)

Total Liabilities:  $2,499,500

///
///
///
///
///
///

(iv)    Debtor's January 24, 2016 Income and Expense Declaration

(Exh. "L" to the N. Goldman Dec.).

Average monthly income:  $3,005

Average monthly expenses:  $6,337

Real Property and Personal Property Assets:  $800,000

Jewelry and Watches:  $20,000

Stocks and Bonds:  $25,000

Paintings:  $100,000

Bayview Property Equity:  $650,000

Palmetto Property Equity:  $105,000

Tarzana Interest: $250,000

(v)    Debtor's Schedules and Statement of Affairs filed February 12, 2016 (Doc. 12).

Average monthly income:  $6,300 (Doc. 12, p. 28)

Average monthly expenses:  $15, 211.42 (Doc. 12, p. 30)

Real Property and Personal Property Assets:  $579,449.74

Total Liabilities:  $750,798.37

Artwork stored in Florida:  Value Unknown (Doc. 12, p. 5)

Artwork stored in California:  Value Unknown (Doc. 12, p. 5)

Bayview Property Fair Market Value:  Value Unknown (Doc. 12, p. 4)

Palmetto Property Fair Market Value:  $500,000 (Doc. 12, p. 3)

Tarzana (Brewster Property) Fair Market Value:  Unknown (Doc. 12, p. 4)

Jewelry and Watches:  $5,000 (Doc. 12, p. 6)

Stocks and Bonds:  $0 Value (Doc. 12, p. 7)

Debtor's bad faith is illustrated by the fact that in his bankruptcy schedules filed on February 16, 2016, the value of many assets is allegedly "unknown." However, one month earlier, on January 24, 2016, the Debtor was able to provide valuations for the very same assets. In addition, Debtor's Schedules intentionally and inaccurately schedule the amount of spousal support owed to N. Goldman

23

1    at $22,000. The correct amount owed to N. Goldman, not including attorney's fees of $65,000, as of

2    the Petition Date is $115,746.99 (See Exhibit "H" to the N. Goldman Dec.).

3        In addition to filing Schedules and Statement of Affairs, Debtor's bad faith is evidenced by the

4    materially false statements Debtor has made to this Court in the declarations he filed under penalty of

5    perjury. On March 21, 2016, Debtor filed his Supplemental Declaration of Todd Goldman in the

6    Emergency Motion ("Debtor's Supplemental Declaration") (Doc. 35). Debtor's Supplemental

7    Declaration states: "I need a criminal attorney to defend me with respect to the charges brought by

8    Nicole so that I can continue to work and earn income. The hearing on the criminal contempt charges

9    is on April 19, 2016. In September 2015, Nicole filed contempt charges against me, which were

10   subsequently dismissed. She has brought these charges again, which I need to defend." (Doc. 35, p.

11   4). This statement is false. N. Goldman's Order to Show Cause petitions to hold Debtor in contempt

12   for failure to pay contempt have been withdrawn and are not pending. (¶ 19 of the N. Goldman Dec.)

13   The Order to Show Cause Debtor filed criminal contempt charges against N. Goldman on October 15,

14   2015. A true and correct copy of the Debtor's contempt charges are attached as Exhibit "P" to the

15   RJN. The Debtor is prosecuting criminal contempt charges against N. Goldman; N. Goldman is not

16   prosecuting criminal contempt charges against the Debtor. N. Goldman is represented by a public

17   defender in the criminal contempt proceedings filed by the Debtor. (¶ 19 of the N. Goldman Dec.).

18   Thus, Debtor's statements under penalty of perjury filed in this case were false.

19       In addition, Debtor's Supplemental Declaration falsely states: "On March 25, 2015, I filed a

20   motion to modify my support payments based on my current income and expenses ("Request for

21   Modification). This Request for Modification has been pending for over a year due to my wife, Nicole

22   Goldman's ("Nicole") Domestic Violence Restraining Orders against me (none of which have merit,

23   but have been used as a delay tactic and ploy to win sole custody of our daughter)." (Doc. 35, p. 3).

24   The true facts are that Debtor's March 2015 request to modify was dismissed because the Family

25   Court deemed it moot at the hearing on September 17, 2015. The order after hearing was filed on

26   October 16, 2015. A true and correct copy of the order is attached as Exh. "I" to the RJN. At the

27   hearing on September 18, 2015, the Family Court stated that the November 26, 2014 and April 6, 2015

28

1   Support Orders are in full force and effect. A true and correct copy of the September 17, 2015

2   transcript of hearing is attached as Exhibit "H" to the RJN.

3        Lastly, in both the Dissolution Proceeding and the bankruptcy case, the Debtor has failed to

4   disclose his interest in D & G (Doc. 12, p. 36). Debtor filed the Articles of Incorporation of D & G on

5   January 26, 2000 and is listed as the incorporator, agent for receipt of process and director of the

6   company. (See Exhibit "A" to the Request for Judicial Notice ("RJN") filed herewith). During the

7   period of 2000 to April 18, 2014, the Debtor is listed as the Director and President of D & G on the

8   annual reports filed with the Florida Secretary of State. (See Exhibit "B" to the RJN filed herewith).

9   After the Dissolution Proceeding was filed, Debtor purportedly terminated his interest in D & G. The

10  March 15, 2015 annual report for D & G shows that Debtor's brother is the president of D & G and the

11  Debtor is not an officer or director. As of one year of the Petition Date, Debtor was a director and

12  officer of D & G (See Exhibit "B" to the RJN filed herewith). This fact is not disclosed in Debtor's

13  Statement of Affairs.

14      **c.**     **Debtor Has No Realistic Ability to Confirm a Chapter 11 Plan.**

15       As discussed above at pages 11 through 14, Debtor has no reasonable ability to confirm a

16  feasible plan within a reasonable amount of time.

17      **d.**     **Dismissal is in the Best Interest of the Debtor and Creditors.**

18       Once cause for dismissal is established, the Court must choose between dismissal or

19  conversion, whichever is in the best interests of the creditors and the estate. *In re Mense, supra*, 509

20  B.R. at 285. The standard for choosing conversion implies a balancing test to be applied through a

21  case-by-case analysis. *Id.* In this case, N. Goldman and her family hold the largest claims against the

22  Debtor and they favor dismissal. It is likely the Debtor favors dismissal, as the Debtor's Extension

23  Motion anticipates the potential dismissal of the Debtor's case. (Doc. 18).

24       Dismissal of the Debtor's case is in the best interest of those creditors holding dischargeable

25  claims. In *Owens*, the individual Chapter 11 Debtor's former husband moved to dismiss the Debtor's

26  case on bad faith grounds. The bankruptcy court dismissed the case. A law firm that represented the

27  Debtor in a prior Chapter 11 case that was owed fees, appealed the dismissal on the ground conversion

28  was in the best interests of the Estate and the Creditors. The Ninth Circuit in *Owens* affirmed the

1    dismissal. The Court reasoned that Debtor's creditors would be far worse off under Chapter 7 because

2    the accompanying discharge would deny creditors' access to the Debtor's future income. *Id.* at 961.

3    In *Owens*, the Debtor had future earning capacity between $150,000 and $800,000 annually. *Id.*

4         In Debtor's case, his Statement of Affairs shows that in the last two years his annual earnings

5    have averaged approximately $100,000. (Doc. 12, p. 33).   However, Debtor's earnings are likely

6    substantially understated. During N. Goldman's marriage to the Debtor, the Debtor was the primary

7    earner. N. Goldman and the Debtor maintained properties in California and Florida. Their average

8    living expenses were approximately $50,000 per month ($600,000 per year). A true and correct copy

9    of the breakdown of activity on their joint Chase checking account for the period from August 2013 to

10   October 2014 is attached as Exhibit "C" to the N. Goldman Dec. During the marriage, Debtor paid the

11   monthly expenses primarily through their American Express account which he paid on a current basis.

12   During the marriage, the Debtor never asked N. Goldman to reduce her spending. When their bank

13   accounts were running low, Debtor would call his father, who then transferred money to their account.

14   Sometimes, Debtor spoke of money being wired to their account by "Ronnie in New York," whom N.

15   Goldman understood to be Ron Berman who handled the Debtor's finances.  (¶ 5 of the N. Goldman

16   Dec.).

17        N. Goldman contends the Debtor has been hiding his income since she filed the Dissolution

18   Proceeding to evade his support obligations. Given Debtor's past earning history, he likely has high

19   earning capacity in the range of $100,000 to $600,000. If the Debtor's case is converted instead of

20   dismissed, creditors with dischargeable claims would be precluded under the Bankruptcy Code from

21   enforcing their pre-petition claims against the Debtor. Therefore, dismissal is in the best interests of

22   the Debtor's creditors because their ability to enforce their claims against Debtor's income and assets

23   would be preserved through a dismissal. Conversion could result in discharge of their claims. *See,*

24   *Owens v. Treiger (In re Owens)*, 552 F.3d 958 (9th Cir. 2009) (dismissal was in the best interest of the

25   Estate and the creditors when Debtor likely had post-petition income to satisfy creditors' claims).

26        In addition, Courts have also found that dismissal is the best interests of the Estate and the

27   creditors when the Debtor's Estate lacks the liquidity to pay essential administrative expenses. *In re*

28   *Mense*, 509 B.R. 269, 285 (Bankr. C.D. Cal. 2014) (the court found dismissal was in the best interests

1    of creditors because Debtor's estate would be diminished by the significant administrative fees and

2    costs associated with a conversion to Chapter 7); *In re Gannon Intern., Ltd.*, 528 B.R. 906 (E.D.

3    Missouri 2015) (bankruptcy court did not abuse it's discretion in dismissing Chapter 11 case where

4    the Debtor's estate lacked funds to pursue potential assets out of the Country and no creditor offered to

5    pay examiner or trustee fee). Here, there is no doubt that the Debtor's Estate currently lacks the funds

6    to pay essential administrative expenses such as real property insurance. (Doc. 20). The administrative

7    fees that would be incurred in a Chapter 7 could easily diminish the available assets to pay Debtor's

8    creditors.

9          **e.    Movants are Entitled to Recover Sanctions Against the Debtor and his Counsel**

10             **Based on Debtor's Bad Faith Filing.**

11       Federal Rule of Bankruptcy Procedure 9011 provides that by signing a bankruptcy petition, the

12   party and the attorney are warranting that the pleading is not for an improper purpose, and is warranted

13   by existing law, and has evidentiary support. *In re Silberkraus*, 253 B.R. 890, 911 (Bankr. C.D. Cal.

14   2000), *aff'd*, 336 F.3d 864 (9th Cir. 2003).

15       Sanctions against the Debtor and his counsel may be awarded based on the Court's

16   determination the Debtor filed his Chapter 11 petition in bad faith. *In re Marsch*, 36 F.3d 825 (9th Cir.

17   1994). Pursuant to *Marsh*, and the cases following it, a bankruptcy court is required to use a sliding

18   scale test to determine whether a bankruptcy petition is filed in bad faith, and therefore is sanctionable

19   pursuant to Rule 9011. *Id.* at 830. As stated in *Marsch*, bankruptcy courts must consider both

20   frivolousness and improper purpose on a sliding scale, where the more compelling the showing as to

21   one element, the less decisive need be the showing as to the other." *Id.* In *In re Silberkraus,* the Ninth

22   Circuit affirmed the bankruptcy court's award of sanctions exceeding $50,000 against the Debtor and

23   his counsel for the Chapter 11 petition that was filed in bad faith for the improper purpose of impeding

24   a state court trial. *In re Silberkraus, supra,* 336 F.3d at 868.

25       The "safe harbor" section of Rule 9011 does not apply to the filing of an initial chapter 11

26   petition. *In re Silberkraus, supra,* 336 F.3d at 868. However, under Rule 9011(c) (1) (A), Movants

27   are required to file a separate motion and obtain a separate hearing date on their request for sanctions.

28   Movants request that any dismissal order entered by the Bankruptcy Court reserve jurisdiction to

1    consider Movants' motion and to decide whether sanctions against Debtor and his counsel are

2    warranted under Federal Rule of Bankruptcy Procedure 9011 and 11 U.S.C. § 105.

3    **B.    The Court Should Abstain Under 11 U.S.C. § 305.**

4    Section 305(a)(1) of the Bankruptcy Code provides that the court after notice and hearing may

5    dismiss or suspend all proceedings, at any time, if the interests of creditors and the debtor would be

6    better served by such dismissal or suspension. 11 U.S.C. § 305. Section 305 grants significant

7    discretion to the Bankruptcy Courts to decline to exercise jurisdiction over a case filed under Title 11

8    even when jurisdiction is otherwise appropriate. *In re Efron*, 535 B.R. 505, 510 (Bankr. D. Puerto

9    Rico 2014). The decision to abstain is made on a case by case basis and is guided by the best interest

10   of all parties, including the Debtor. *Eastman v. Eastman (In re Eastman),* 188 B.R. 621, 624 (9th Cir.

11   B.A.P. 1995). Factors the courts consider are: (1) the absence of a bankruptcy purpose; (2) cases

12   where there is a pending state law proceeding; (3) another forum is better suited to see the case; (4)

13   efficiency and economy of administration and (5) the case is a two party dispute. *Id.* at 510-511. Here

14   the factors clearly support abstention and the Debtor would be better served by dismissal than

15   conversion.

16   **1.    Debtor's Case Serves No Bankruptcy Purpose.**

17   This Court scheduled April 4, 2016 as the deadline for the Debtor to file a Plan and Disclosure

18   Statement. On March 2, 2016, the Debtor filed the Extension Motion. (Do. 18). The Extension

19   Motion sought an extension of the Court's deadline on the ground, among others, that the Debtor may

20   seek to dismiss his Chapter 11 case before he files a Disclosure Statement and Plan. The Extension

21   Motion states: "Finally, if settlement discussions progress expeditiously, it may be possible to

22   consummate a settlement which will allow unsecured claims to be paid through a Motion to Dismiss

23   the case without Debtor incurring the significant fees required to prepare and file a Chapter 11

24   Disclosure Statement and Plan of Reorganization.") (Doc. 18, p. 5, ll. 23-28). Thus, Debtor's

25   Extension Motion supports N. Goldman's contention that Debtor filed his bankruptcy case as a

26   litigation tactic to modify the support orders and to extract a settlement of his claims against N.

27   Goldman and her family on terms more favorable than the anticipated outcome in the pending

28   Dissolution Proceeding and related State Court litigation. The Family Court determined after a two-

1    day trial that the Debtor's statements were not credible. A true and correct copy of the transcript of

2    hearing is attached as Exhibit "M" (on page 4) to the RJN.

3       The fact that Debtor's case lacks a bankruptcy purpose is further evidenced by the Debtor's

4    Schedules, Statement of Affairs and Debtor's Emergency Motion. As discussed above at pages 11 to

5    14, the Debtor has no ability to confirm a feasible plan within a reasonable period of time.

6       **2.  On the Petition Date, There Were Two Pending State Law Proceedings.**

7       There is no dispute that the Dissolution Proceeding has been pending in State Court since

8    November 24, 2014 and that the case has been actively litigated between the parties. Debtor filed his

9    petition on February 2, 2016, three days before the February 4, 2016 hearing in the Dissolution

10    Proceeding to obtain an attorney fee award of $200,000 and to sell the Bayview Property. Further, the

11    Debtor chose the State Court forum to prosecute a fraudulent conveyance claim against N. Goldman's

12    family related to the Brewster Property. The Brewster Property Action has been pending since July 1,

13    2015. Debtor filed a Notice of Removal of the Brewster Property Action on March 28, 2015 (Doc. 1).

14    Defendants believe the removal was improper and will be filing a motion to remand under 11 U.S.C. §

15    1452. The fact remains, on the Petition Date, two state court lawsuits involving the issues the Debtor

16    seeks to re-hash in the Bankruptcy Court were pending.

17       **3.  The State Court is Better Suited to Determine the Division of Property and**

18          **Alleged Fraudulent Conveyance Claims.**

19       The Family Court has been dealing with the case for the one and one-half years. Non-

20    bankruptcy law determines the nature and extent of the Debtor's interest in property. *Butner v. United*

21    *States*, 440 U.S. 48, 54-55 (1979). The state court presiding over a family court action, although not

22    technically a  specialized tribunal, has significant expertise and experience in handling such

23    domestic relations matters. *In re Dryja*, 425 B.R. 608, 611 (Bankr. D. Colo. 2010). The Ninth Circuit

24    held: "It is appropriate for bankruptcy courts to avoid incursions into family law matters out of

25    consideration of court economy, judicial restraint, and deference to our state court brethren and their

26    established expertise in such matters." *Mac Donald v. Mac Donald (In re MacDonald)*, 755 F.2d 715,

27    717 (9th Cir. 1985). Absent unusual circumstances, federal law favors state retention over domestic

28

1  matters. *In re Robbins*, 964 F.2d 342, 345 (4th Cir.1992).  Absent unusual circumstances, bankruptcy

2  courts should accord strong deference to the Family Court in the area of domestic relations.

3      The Brewster Property Action is merely an extension of the Dissolution Proceeding.  The

4  Brewster Property is owned by N. Goldman's family.  N. Goldman's family would like to sell the

5  Brewster Property and are ready to repay the $250,000 contribution to N. Goldman and the Debtor.

6  (¶ 4 of the N. Goldman Dec.).  N. Goldman's family is due unpaid rent from the Debtor and N.

7  Goldman.  To date, Debtor has refused to lift the *lis pendens* he recorded in connection with the

8  Dissolution Proceeding against the Brewster Property, because he claims the $250,000 is his separate

9  property and not community property. (¶ 4 of the N. Goldman Dec.).  Whether the $250,000 is

10  Debtor's separate or community property is an issued governed by State law that is appropriately

11  resolved in the State Court.  *Mac Donald v. Mac Donald (In re MacDonald)*, 755 F.2d 715, 717 (9th

12  Cir. 1985).

13      **4.    Efficiency and Economy of Administration Favor Abstention.**

14      The Dissolution Proceeding has been pending since October 2014.  The Family Court is

15  intimately familiar with N. Goldman, the Debtor and the real property transactions involving N.

16  Goldman's family. The Family Court has made extensive rulings on child and spousal support and

17  significant discovery concerning the Debtor's financial affairs and depositions have been conducted in

18  the State Court. (See pp. 4-7 of the Declaration of Ronald F. Brot filed on November 25, 2015

19  (without exhibits) attached as Exhibit "K" to the N. Goldman Declaration).  The Brewster Property

20  Action was initiated by the Debtor in State Court and has been pending since July 1, 2015.  Judicial

21  economy is served by allowing the State Courts to resolve the property division issues between N.

22  Goldman and her family in the related real property transactions.

23      **5.    The Case is Essentially a Two-Party Dispute.**

24      Debtor's case is essentially a two-party dispute. Debtor's Schedule D states that the Debtor's

25  secured debt totals $382,595.89.  Debtor's Schedules E and F state that the Debtor's  unsecured claims

26  totaling $346,202.48; of this amount, $273,080.28 of the creditors' general unsecured claims, or

27  seventy-eight percent (78%) of the non-priority creditors' claims are related to the Dissolution

28  Proceeding.  Only $76,122.20 of the unsecured creditors' claims are not connected to the Dissolution

30

1 | Proceeding and the collateral State Court litigation. The Debtor scheduled N. Goldman as a priority

2 | unsecured creditor with a claim in the amount of $22,000, and the Franchise Tax Board as a claimant

3 | with a claim in an unknown amount. N. Goldman's priority claim as of the Petition Date, including

4 | the $65,000 fee award, totals $186,746.60 ($115,746 child and spousal support and $65,000 attorneys'

5 | fees). When Debtor's "known" priority debt and general unsecured debt are combined, the accurate

6 | total is approximately $461,949.08 ($346,202.48 + $115,746.60). Thus, of the total unsecured creditor

7 | debt, creditors unrelated to the Dissolution Proceeding and the litigation with N. Goldman's family

8 | ($76,122.20) only account for approximately sixteen percent (16%) of the Debtor's unsecured debt.

9 | Where most of the creditors of the Debtor's estate relate to a dissolution proceeding, the Court found

10 | the case was essentially a two-party dispute. *In re Sherman*, 2009 WL 1607856 (Bankr. D. Ariz.

11 | 2009).

12 |

### IV.

### CONCLUSION

14 | Wherefore, based on the above and the foregoing, Movants respectfully request that the Court

15 | abstain from exercising jurisdiction over the Debtor's case and that the Court dismiss the Debtor's

16 | case under 11 U.S.C. § 305. In the alternative, Movants request that the Court dismiss the Debtor's

17 | case under 11 U.S.C. § 1112(b). In addition, based on the Debtor's willful failure to comply with the

18 | Support Orders and the Court's determination that the Debtor's case was filed in bad faith, Movants

19 | request that the Court dismiss the Debtor's case with prejudice and issue an order barring the Debtor

20 | from filing a petition for relief for 180 days under 11 U.S.C. §109(g). *In re Van Eck*, 425 B.R. 54, 67

21 | (Bankr. D. Conn. (2010). Further, Movants request that the dismissal order provide that the Court

22 | retain jurisdiction to consider and determine Movants' separate Motion for Sanctions and Attorneys'

23 | Fees which Movants intend to file pursuant to Federal Rule of Bankruptcy Procedure 9011(b) and 11

24 | ///

25 | ///

26 | ///

27 | ///

28 | ///

1 │ U.S.C. § 105.  In the event the Court determines that conversion, rather than dismissal, is in the best

2 │ interests of the Estate and the creditors, Movants request that the Court convert the Debtor's case to

3 │ Chapter 7.

4 │                                 Respectfully Submitted,

5 │ DATED:  March 30, 2016                    Gates, O'Doherty, Gonter & Guy, LLP

6 │

7 │                            By:     /s/ Lisa Torres

8 │                                  Lisa Torres,
                                 Attorney for Movants

9 │

10 │

11 │

12 │

13 │

14 │

15 │

16 │

17 │

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │

26 │

27 │

28 │

## DECLARATION OF NICOLE GOLDMAN

I, Nicole Goldman, hereby declare and state as follows:

1.  I am an individual over the age of eighteen and am Debtor's spouse and Debtor's creditor in the above-captioned case. The statements made in this Declaration are based on my personal knowledge unless stated upon information and belief. If called as a witness, I could and would competently testify thereto.

2.  The Debtor and I were married on April 13, 2011, and we have one minor daughter born on August 13, 2011.

3.  Debtor's mother, Lenore Goldman ("L. Goldman") owned real property located at 565 Bayview Drive, Belleair, Florida 33756 ("the Bayview Property"). I am informed and believe that L. Goldman was an obligor on a secured loan encumbering the Bayview Property; the secured loan had a principal balance of approximately $553,329.52 on September 12, 2014 ("the Bayview Secured Loan"). In or about September 2014, when L. Goldman sought to liquidate or transfer her ownership in the Bayview Property, I obtained financial assistance from my mother, Jasmin Ismail ("J. Ismail") to acquire the Bayview Property. My mother, J. Ismail, paid off L. Goldman's Bayview Secured Loan in the amount of $553,329.52. In consideration for J. Ismail's payment, on September 12, 2014, L. Goldman as grantor conveyed her interest in the Bayview Property to: Debtor and N. Goldman as husband and wife, as to a fifty percent (50%) interest; and J. Ismail, a single woman, as to a fifty percent (50%) interest. A true and correct copy of the Quitclaim Deed is attached as Exhibit "A" hereto.

4.  In or about June 2014, the Debtor desired to purchase a home located at 4672 Brewster, Tarzana, California 91356 ("the Brewster Property"). The purchase price for the Brewster Property was approximately $1,300,000. My grandfather, Hasan Ismail ("H. Ismail") and my aunt, Nasim Ismail ("N. Ismail") agreed to purchase the Brewster Property and to rent the property to Debtor and I until we had sufficient funds to purchase the Brewster Property. Due to the Debtor's failure to pay me rent as required by the Support Orders, I have not paid H. Ismail and N. Ismail rent. The Debtor and I wired $250,000 towards the $1,300,000 purchase price of the Brewster Property. We are not on title to the Brewster Property. True and correct copies of the wire transfer records are

33

1  attached as Exhibit "B" hereto. My daughter and I recently moved out of the Brewster Property. I filed

2  a motion in the Dissolution Proceeding seeking authority to move out-of-state with my daughter.  My

3  family has offered to sell the Brewster Property and use the sale proceeds to pay the Debtor and me for

4  our $250,000 contribution towards the purchase price.  I am informed and believe that our community

5  interest in the Bayview Property is in the range of $323,335 to $377,208 before closing costs.  The

6  Debtor's fifty percent interest in the likely net sale proceeds from the Bayview Property totals

7  approximately $161,667.50 to $188,604.  To date, Debtor's refusal to remove the *lis pendens* he filed

8  against the Brewster Property in December 2014 has prevented my family from selling the Brewster

9  Property.

10      5.      During the period I was married to the Debtor, he told me he was the owner of David

11  and Goliath, Inc. ("D & G").  I am informed and believe the Debtor filed the Articles of Incorporation

12  of D & G on January 26, 2000 and he is listed as the incorporator, agent for receipt of process and

13  director of the company.  I am informed and believe Debtor was a fifty percent (50%) shareholder in

14  D & G.  During the period of 2000 to April 18, 2014, the Debtor is listed as the Director and President

15  of D & G on the annual reports filed with the Florida Secretary of State.  After the Dissolution

16  Proceeding was filed, Debtor purportedly terminated his interest in D & G and he allegedly stopped

17  receiving a salary from D & G. I am informed and believe that the Debtor has a continuing interest in

18  D & G and that he continues to receive unreported income from D & G.  Debtor's Statement of Affairs

19  shows that in the last two years his annual earnings have averaged approximately $100,000.  However,

20  I believe Debtor's earnings are likely substantially understated. During our marriage, the Debtor was

21  the primary earner.  We maintained properties in California and Florida.  Our average living expenses

22  were approximately $50,000 per month ($600,000 per year).  A true and correct copy of the

23  breakdown of activity on their joint Chase checking account for the period from August 2013 to

24  October 2014 is attached as Exhibit "C" hereto. During our marriage, Debtor paid the monthly

25  expenses primarily through our American Express account which he paid on a current basis.  In

26  addition, during the marriage, the Debtor never asked me to reduce her spending.  When our bank

27  accounts were running low, Debtor would call his father, who then transferred money to our account.

28  Sometimes, Debtor spoke of money being wired to their account by "Ronnie in New York," whom I

1   understood to be Ron Berman who handled the Debtor's finances.  Documents produced pursuant to a

2   subpoena issued in the Dissolution Proceeding by J.P. Morgan Chase bank where Debtor held three

3   brokerage accounts, reveal that in August 2013, Debtor stated his annual income was over $400,000

4   and his occupation was President of D & G.  (See Exhibit "D" attached hereto).  Further, documents

5   produced by Chase provide that in May 2005, Debtor stated his annual income was over $1,000,000,

6   that his net worth was $2,000,000, and that the source of his wealth is his employment as President of

7   D & G.  (See Exhibit "E" attached hereto).  Additional documents produced pursuant to subpoena by

8   TD Ameritrade where Debtor held an account, reveal that in November 2013, Debtor stated his annual

9   income was over $250,000 and his occupation was Officer of D & G.  Debtor stated that his net worth

10   was between $1,000,000 and $1,999,999.  (See Exhibit "F" attached hereto).  In December 2014,

11   Debtor completed what appears to be a housing application in which he stated his gross monthly

12   income from D & G is $20,000.  (See Exhibit "G" attached hereto).  I am informed and believe that

13   the Debtor has been hiding his income since I filed the Dissolution Proceeding to evade his support

14   obligations.  Given Debtor's past earning history, I believe the Debtor has earning capacity in the

15   range of $100,000 to $600,000 per year.

16       6.       On October 28, 2014, I filed a dissolution of marriage action in the Superior Court of

17   the State of California, County of Los Angeles, Case No. 610-524 ("the Dissolution Proceeding").

18       7.       On November 4, 2014, the Court in the Dissolution Proceeding issued a Domestic

19   Violence Temporary Restraining Order ("the November 2014 DVTRO") against the Debtor.

20   Subsequent Domestic Violence Temporary Restraining Orders have been issued in the Dissolution

21   Proceeding.

22       8.       On November 24, 2014, the Debtor and I entered into a Stipulation and Order

23   Regarding Personal Conduct Orders and Support ("the November 2014 Support Stipulation and

24   Order").   The November 2014 Support and Stipulation Order provided in relevant part that

25   commencing on December 1, 2014, and continuing until further order of the Court or written

26   agreement of the parties, the Debtor shall pay me: $4,000 per month as temporary support; rent

27   ($5,500 per month), utilities and property maintenance (approximately $1,800 per month); my car

28   payment (approximately $600 per month); our daughter's school tuition (approximately $700 per

month) and health insurance coverage for my daughter and me. Debtor was represented by Alexandra

Lavinsky, Esq. when the November 2014 Support Stipulation and Order was entered.

9.      On February 11, 2015, I filed a Request for Order for Attorney Fees and Costs in the

Dissolution Proceeding. The matter was heard on June 30, 2015. On August 12, 2015, the Court in

the Dissolution Proceeding ordered the Debtor to pay the sum of $65,000 to my counsel, Brot &

Gross, LLP ("the August 2015 Fee Order"). The Debtor has not made any of the payments required

by the August 2015 Fee Order.

10.     In March 2015, Debtor filed a request to modify support. The Debtor's request to

modify support filed in March 2015 was dismissed because the Family Court deemed it as moot at the

hearing on September 17, 2015. The order after hearing was filed October 16, 2015. At the

September 17, 2015 hearing, the Family Court stated that the April 6, 2015 and November 24, 2014

Support Orders and Stipulations (collectively "the Support Orders") remained in full force and effect.

11.     On April 6, 2015, the Debtor and I reaffirmed the support orders contained in the

November 26, 2014 Stipulation and Order in a further Stipulation and Order dated April 6, 2015.

Debtor was represented by Ali Fishbein of Buter, Buzard, Fishbein & Royce when the April 6, 2015

Support Stipulation and Order was entered.

12.     Attached hereto as Exhibit "H" is a true and correct copy of the Income and Expense

Declaration dated May 27, 2015, Debtor served in the Dissolution Proceeding.

13.     On July 1, 2015, Debtor filed a Complaint against me, H. Ismail and N. Ismail in the

Superior Court for the State of California initiating Case No. LC1102984 related to the Brewster

Property. In addition, on December 9, 2014, Debtor filed a *lis pendens* against the Brewster Property

("the *Lis Pendens*"). Due to the *Lis Pendens*, H. Ismail and N. Ismail have not been able to sell the

Brewster Property. H. Ismail and N. Ismail have offered to sell the Brewster Property and to

reimburse the Debtor and me for our $250,000 contribution to the purchase price. To date the Debtor

refuses to remove the *lis pendens* so that the Brewster Property can be sold.

14.     On July 15, 2015, I filed an Order to Show Cause and Affidavit for Contempt in the

Dissolution Proceeding against Debtor for his failure to pay court-ordered support, violations of the

36

1 | DVTRO, and violations of the automatic restraining orders arising under California law ("the "First

2 | OSC re Contempt").

3 |       15.    Attached hereto as Exhibit "I" is a true and correct copy of the Income and Expense

4 | Declaration dated August 17, 2015, Debtor served in the Dissolution Proceeding.

5 |       16.    Following the filing of the First OSC re Contempt, Debtor continued to disobey the

6 | court-ordered support, unilaterally terminated my health and car insurance without my knowledge in

7 | violation of the automatic restraining orders and failed to pay court-ordered attorneys' fees.

8 | Accordingly, on September 4, 2015, I filed a second Order to Show Cause and Affidavit for Contempt

9 | against Debtor. ("the Second OSC re Contempt). The First and Second OSCs re Contempt have been

10 | withdrawn and are no longer pending.

11 |       17.    Attached hereto as Exhibit "J" is a true and correct copy of the Declarations of

12 | Disclosures dated September 25, 2015, Debtor served in the Dissolution Proceeding.

13 |       18.    On September 28, 2015, Debtor re-filed a request to modify support.

14 |       19.    On October 15, 2015, Debtor filed criminal contempt charges against me in the

15 | Dissolution Proceeding alleging that I violated orders allegedly limiting my right to travel with our

16 | minor daughter. I have no pending criminal contempt charges against the Debtor. Rather, I am using

17 | the services of a Public Defender to defend the criminal charges the Debtor is pursuing against me.

18 |       20.    On November 25, 2015, I filed a Request for Attorney Fees and Costs in the

19 | Dissolution Proceeding which was set for hearing on February 5, 2016 ("the November 2015

20 | Motion"). The November 2015 Motion requested that the Court order the Debtor to pay at least an

21 | additional $200,000 as a contributive share of my attorney fees and costs, and that the Court in the

22 | Dissolution Proceeding order the sale of the Bayview Property, the parties' proceeds of which would

23 | be used for the payment of the Court's August 2015 Fee Orders well as an additional fee order

24 | pursuant to the Request. A true and correct copy of Ronald F. Brot's Declaration in Support of the

25 | November 2015 Motion, without exhibits, is attached hereto as Exhibit "K."

26 |       21.    Attached hereto as Exhibit "L" is a true and correct copy of the Declarations of

27 | Disclosures dated January 25, 2016, Debtor served in the Dissolution Proceeding.

28 |

22.    I believe that the Debtor filed his Chapter 11 petition on February 2, 2016, three days before the hearing scheduled for February 5, 2016 in the Dissolution Proceeding, to block the Family Court from the sale of the Bayview Property.

23.    The Debtor has not paid the support orders to me required under the terms of the November 2014 Support Stipulation and Order and the April 2015 Stipulation and Order.  In addition, the Debtor also terminated a life insurance policy for the benefit of our daughter and violated the DVTROs.  I calculate that as of the Petition Date the Debtor owes me $115,746.66 in other unpaid bills ordered by the Family Court and the $65,000 Fee Order.  At spreadsheet showing my calculation of the amount due and unpaid as of the Petition Date is attached hereto as Exhibit "M."  Following the Petition Date, Debtor has not paid me the amounts due on March 1, 2016 in the approximate amount of $11,500 (excluding the attorney fee order) under the Support Orders and Fee Orders.  Debtor did not pay me the $200 he claims he paid post-petition in February and March 2016.

24.    I believe that the Debtor filed his Chapter 11 petition on February 2, 2016, three days before the hearing scheduled for February 5, 2016 in the Dissolution Proceeding, to block the Family Court from ordering the sale of the Bayview Property.

25.    Based on Debtor's failure to pay the Support Orders, I have been meeting with Social Services because I cannot care for our daughter with no financial support from the Debtor and meet my monthly expenses.

26.    On March 2, 2016, due to Debtor's petition filing, enforcement of the Fee Orders is stayed.  As a result, I can't pay my counsel in the Dissolution Proceeding and my counsel filed a Substitution of Attorney.  I am currently representing myself in the Dissolution Proceeding.

27.    I am informed and believe that the following creditors listed on the Debtor's bankruptcy Schedules are connected to the Dissolution Proceeding and the Debtor's litigation against my family: Felicia Myers (scheduled at $70,000); J. Marc. Dion (scheduled at $12,000); Ali Fishbein (scheduled at $8,500) and Alexandra Levinsky (scheduled at $800) represented the Debtor in the Dissolution Proceeding. Lisa Hacker (scheduled at $300) is an unpaid family therapist the Debtor was ordered to see by the Family Court. Ilene Fletcher (scheduled at $1,480) is an unpaid professional monitor for visitations to our daughter. Bruce Lorman (scheduled at $15,000) is the attorney Debtor

38

1 | hired to file the Brewster Property Action.  My priority domestic support obligation is inaccurately

2 | scheduled in the amount of $22,000; the correct amount of unpaid spousal support as of the Petition

3 | date exclusive of attorneys' fees totals $115,746.60.  Ron Brot, my prior counsel, is scheduled with a

4 | claim in the amount of $65,000.  Jasmin Ismail, my mother, is scheduled as a creditor with a $100,000

5 | claim.

6 |         I declare under penalty of perjury that the foregoing is true and correct and that this

7 | Declaration was executed at _____Woodland Hills_____, _____California_____, on the below date.

8 |

9 | Dated: ___March 29, 2016___

          NICOLE GOLDMAN

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |