**Daniel J. Weintraub - Bar #132111**
**James R. Selth - Bar #123420**
**Elaine V. Nguyen - Bar #256432**
**WEINTRAUB & SELTH, APC**
**11766 Wilshire Boulevard, Suite 1170**
**Los Angeles, CA 90025**
**Telephone: (310) 207-1494**
**Facsimile: (310) 442-0660**

Attorneys for Debtor and Debtor-In-Possession,
TODD GOLDMAN

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA — LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>TODD GOLDMAN,<br><br>     Debtor and Debtor-In-Possession. | ) Case No.: 2:16-bk-11330-BR<br>)<br>) Chapter 11<br>)<br>) **OPPOSITION OF DEBTOR TO**<br>) **MOTION OF NICOLE GOLDMAN AND**<br>) **JASMIN ISMAIL TO DISMISS, OR IN**<br>) **THE ALTERNATIVE, TO CONVERT**<br>) **DEBTOR'S CHAPTER 11 CASE;**<br>) **DECLARATION OF TODD GOLDMAN**<br>) **IN SUPPORT**<br>)<br>) **(Amended and refiled to correct hearing**<br>) **date)**<br>)<br>) Date:    April 26, 2016<br>) Time:    2:00 p.m.<br>) Place:   Courtroom 1668<br>)          255 E. Temple Street<br>)          Los Angeles, CA 90012<br>) |

      **TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY**

**JUDGE, OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED**

**PARTIES**:

Debtor and Debtor-in-Possession, Todd Goldman ("Debtor") hereby files the following Opposition to the Motion of Nicole Goldman and Jasmin Ismail ("Movants") to Dismiss, or in the Alternative, to Convert his Chapter 11 Case ("Motion to Dismiss") [Docket No. 39].

As this Court is aware from the pleadings filed in this case, and the pending adversary Complaint, this Motion to Dismiss has been filed by some of the very parties against whom Debtor seeks to recover significant fraudulent transfers for the benefit of the estate and <u>all</u> its creditors.  As set forth below, once the issue of payment of Debtor's <u>actual</u> post-petition domestic support obligations to Nicole Goldman is resolved and proof of compliance with 11 U.S.C. § 1112(b)(4)(P) provided to this Court, the remaining claims in the Motion to Dismiss are nothing more than a laundry list of false and irrelevant accusations which should not be taken at face value given the strong motivation of the Movants to be free of the fraudulent transfer claims which will be prosecuted in this bankruptcy case.  The facts do not support dismissal or conversion of the case.

## I.    <u>INTRODUCTION</u>

On February 2, 2016 (the "<u>Petition Date</u>"), Debtor Todd Goldman ("Debtor") commenced this bankruptcy case ("<u>Bankruptcy Case</u>") by filing a voluntary petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §101 *et seq.* (the "<u>Bankruptcy Code</u>").  Debtor is managing his financial affairs as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

As set forth in the attached Declaration of Todd Goldman ("Goldman Dec."), the Debtor is a cartoon artist and currently lives in Los Angeles, California.  Debtor is currently going through a divorce, in which he has previously been representing himself in *pro per*.

Debtor's primary assets are his rental property located at 548 Palmetto Rd., Belleair, Florida 33756 (the "<u>Palmetto Property</u>"), his fractional interest in the real property located at 565 Bayview Dr., Belleair, Florida 33756 (the "<u>Bayview Property</u>"), his equitable interest in the real property located at 4672 Brewster Dr., Tarzana, CA 91356 (the "<u>Brewster Property</u>"), and claims for fraud and recovery of fraudulent conveyances relating to the Bayview Property and Brewster Property against his estranged spouse Nicole Goldman, her mother Jasmin Ismail and Nicole's

grandfather Hasan Ismail and aunt Nasim Ismail (collectively, "Defendants"), which are the subject of the removed Superior Court case filed on March 28, 2016 as Adversary No. 2:16-ap-01162-BR.  As discussed more specifically below, in the next 15 days, the Debtor intends to amend the Complaint in the removed action (or simply will file a new action to recover fraudulent conveyances pertaining to the Brewster and Bayview houses) to recover over one million dollars in fraudulent conveyances to Defendants.

Because there are no creditors with large enough claims who are sufficiently incentivized to bring such actions and the debtor-in-possession is best positioned to bring these actions, bankruptcy court jurisdiction is necessary and will enable the Debtor to recover the transfers, sell the recovered assets and pay the allowed claims of his creditors.

The Bankruptcy Case was filed in order to enable Debtor to restructure his financial affairs, including the recovery of assets which he transferred in reliance on fraudulent representations, and repay or resolve the claims of the twenty-six (26) scheduled creditors. Debtor also faces the prospect of a large fee bill from his soon to be ex-wife's attorney.  His estranged wife's attorney also sought an order to force the sale of the Palmetto Property, an asset Debtor acquired before marriage.  Debtor is in the process of selling the Palmetto Property to raise funds for the estate.

Lastly, the Debtor will also consolidate and litigate fraudulent transfer and other claims against his estranged wife's family members, which affects the Debtor's interests in the Bayview and Brewster properties and is expected to result in a recovery in excess of one million dollars. The Debtor's objective in this case is to propose a Plan of reorganization to pay all allowed secured and unsecured claims.

## II.    PAYMENT OF POST-PETITION DOMESTIC SUPPORT OBLIGATIONS

As set forth in the Goldman Dec. and Exhibit "1" thereto, Debtor was able to successfully advance the hearing in the Superior Court on his Motion to modify his support obligations from July 16, 2016 to April 19, 2016.  The expected reduction in court-ordered support will be retroactive to before the Petition Date and proof of Debtor's payment of all post-

In the instant case, Debtor is not "flagrantly disregarding" the domestic support order, but is actively seeking to assert his rights to modify this order in the Superior Court, something he has been trying to do for eleven months <u>prior</u> to the bankruptcy filing.

### III.    THE CHAPTER 11 CASE IS NEEDED TO RECOVER PROPERTY OF THE ESTATE FOR ALL CREDITORS

As noted above, and in the adversary case removed from the Superior Court, Debtor has legitimate fraudulent transfer claims relating to both the Bayview Property and the Brewster Property.  These claims are against the two Movants as well as additional members of the family of Debtor's separated spouse, Nicole Goldman, and the underlying facts are described in detail in the attached Goldman Dec.  The material facts set forth in the Motion to Dismiss regarding these claims are misleading at best, and completely false at worst.  Plaintiff must be allowed the opportunity to take discovery concerning any such allegations which the Court would consider in ruling on the Motion to Dismiss, and the Court should thereafter hold an evidentiary hearing as to such disputed facts.

"[11 U.S.C.] Section 548 contains a singular grant of authority to the trustee[1] to avoid fraudulent transfers of a debtor's property for the benefit of all creditors."  <u>Jurista v. Amerinox Processing, Inc.</u>, 492 B.R. 707, 735 (D.N.J. 2013).  Fraudulent transfer law is used "to avoid transactions which unfairly or improperly deplete a debtor's assets or that unfairly dilute the claims against those assets."  *Collier on Bankruptcy*, ¶548.01 (16th ed.).

As noted by the Ninth Circuit, "the primary focus of section 548 is on the net effect of the transaction on the debtor's estate and the funds available to the unsecured creditors."  <u>In re Northern Merchandise, Inc.</u>, 371 F.3d 1056, 1059 (9th Cir. 2004).  "Fraudulent conveyance law aims to make available to creditors those assets of the debtor that are rightfully part of the bankruptcy estate, even if they have been transferred away."  <u>In re PWS Holding Corp.</u>, 303 F.3d

---

[1]  11 U.S.C. Section 1107 of course expands the definition of "trustee" to include the debtor-in-possession.

In the instant case, Debtor is not "flagrantly disregarding" the domestic support order, but is actively seeking to assert his rights to modify this order in the Superior Court, something he has been trying to do for eleven months <u>prior</u> to the bankruptcy filing.

### III.    THE CHAPTER 11 CASE IS NEEDED TO RECOVER PROPERTY OF THE ESTATE FOR ALL CREDITORS

As noted above, and in the adversary case removed from the Superior Court, Debtor has legitimate fraudulent transfer claims relating to both the Bayview Property and the Brewster Property.  These claims are against the two Movants as well as additional members of the family of Debtor's separated spouse, Nicole Goldman, and the underlying facts are described in detail in the attached Goldman Dec.  The material facts set forth in the Motion to Dismiss regarding these claims are misleading at best, and completely false at worst.  Plaintiff must be allowed the opportunity to take discovery concerning any such allegations which the Court would consider in ruling on the Motion to Dismiss, and the Court should thereafter hold an evidentiary hearing as to such disputed facts.

"[11 U.S.C.] Section 548 contains a singular grant of authority to the trustee[1] to avoid fraudulent transfers of a debtor's property for the benefit of all creditors."  <u>Jurista v. Amerinox Processing, Inc.</u>, 492 B.R. 707, 735 (D.N.J. 2013).  Fraudulent transfer law is used "to avoid transactions which unfairly or improperly delete a debtor's assets or that unfairly dilute the claims against those assets."  *Collier on Bankruptcy*, ¶548.01 (16th ed.).

As noted by the Ninth Circuit, "the primary focus of section 548 is on the net effect of the transaction on the debtor's estate and the funds available to the unsecured creditors."  <u>In re Northern Merchandise, Inc.</u>, 371 F.3d 1056, 1059 (9th Cir. 2004).  "Fraudulent conveyance law aims to make available to creditors those assets of the debtor that are rightfully part of the bankruptcy estate, even if they have been transferred away."  <u>In re PWS Holding Corp.</u>, 303 F.3d

---

[1]  11 U.S.C. Section 1107 of course expands the definition of "trustee" to include the debtor-in-possession.

308, 313 (3rd Cir. 2002), cert. denied 538 U.S. 924 (2003).

"Fraudulent conveyance statutes, whether under federal or state law, seek to avoid a windfall to the creditor, to prevent a disproportionate loss to the debtor and, especially in bankruptcy cases, to recognize the rights of unsecured creditors to all of the debtor's non-exempt assets, including non-exempt equity in real estate." Sensenich v. Molleur (In re Chase), 328 B.R. 675, 681 (Bankr. D. Vt. 2005).

In addition to Section 548, a debtor-in-possession, Debtor has rights to avoid transfers under 11 U.S.C. Section 544, which appear applicable since the fraudulent transfers are voidable under applicable law by a creditor holding an unsecured claim.

As there is no creditor with a claim large enough to warrant the expense and time investment needed to bring and prosecute such an action, this case is precisely the reason why Debtor, as a debtor-in-possession, is vested with the authority to bring such an action for the benefit of all creditors of the estate and avoid a windfall for the parties who perpetrated these transfers.  Moreover, unlike the Superior Court, the Bankruptcy Court has jurisdiction over properties outside California, which is crucial in this case because one of the properties which is the subject of Debtor's fraudulent conveyance claims is in Florida.

This is therefore a case which requires Bankruptcy Court jurisdiction, in order to avoid the injustice of the caused by the Debtor's pre-petition transfer of assets based on fraudulent representations and the damage to his creditors.

The removed Superior Court case will be amended by Debtor's litigation counsel as a fraudulent transfer case under the Bankruptcy Code.

## IV.    THE BANKRUPTCY CASE IS NOT A "TWO-PARTY" DISPUTE

While the Motion to Dismiss attempts to portray the case as a two-party divorce dispute being transferred to the bankruptcy court, in fact a review of Debtor's Schedules shows that Debtor has numerous (26) creditors, both related to his pending divorce case and otherwise. These include claims for legal fees, credit card debt, claims arising out of the operation of his art business and claims related to the two Florida properties, including arrearages to the mortgage

lender on the Palmetto Property and property taxes.  Moreover, claims arising out of Debtor's

divorce case, such as past due support and attorneys' fees of Debtor's separated spouse, are also

legitimate claims of real creditors which can be paid through his Chapter 11 Plan.

      Contrary to representations in the Motion, Debtor has not attempted to drag family law

issues into the Bankruptcy Court.  The primary issues of support, custody and status in the

divorce case are not stayed and the Superior Court can and will continue to hear matters and enter

orders relating to these issues.  Issues relating to what is property of the estate, including

community property, are within the Bankruptcy Court's exclusive jurisdiction:

> "The bankruptcy court has exclusive juris-diction over property of
> the estate, including community property.  28 U.S.C. § 1334(e)(1);
> § 541(a)(2).  This exclusively is so even when there is a concurrent
> dissolution proceeding in state court. See <u>Teel v. Teel (In re Teel)</u>,
> 34 B.R. 762, 763-64 (9th Cir. BAP 1983)."

<u>In re Kostenko</u>, 2015 Bankr. LEXIS 2261, at *22 (9th Cir. BAP July 9, 2015)

## V.    <u>DEBTOR CAN PROPOSE A CONFIRMABLE PLAN OF REORGANIZATION</u>

      At the same time Movants decry Debtor's failure to pay the clearly unsupportable

domestic support payments (which are the subject of the Motion to Modify set in the Superior

Court on April 19, 2016), Movants argue that Debtor does not have sufficient income to pay his

monthly expenses and thus the case should be dismissed.  However, this reorganization and the

payment of creditor claims is not premised on Debtor's income, but on the liquidation of assets,

including the recovered fraudulently transferred assets.  Of course, once the support obligations

are reduced to the proper amount by the Superior Court, the income and expense pressures on

Debtor will be significantly relieved.

      However, notwithstanding income and expense issues, Debtor clearly has the ability to

use his separate property assets, including the Palmetto property and the funds contributed to the

Brewster Property (which were all acquired pre-marriage and are certainly not community

property despite the allegations in the Motion to Dismiss) to contribute to a Plan of

reorganization. These assets of course include the recovery of the fraudulent transfer claims against Movants and the other Ismail family members. The arguments Movants make in the Motion to Dismiss regarding the facts of the fraudulent transfers serve to show why this case needs to remain in Chapter 11, where this Court's expertise in trying such claims is paramount.

## VI.    THERE IS NO OTHER LEGITIMATE "CAUSE" TO DISMISS OR CONVERT THE CASE

The remaining arguments made in the Motion to Dismiss are easily dealt with, and should be summarily dismissed, to wit:

Debtor's unsuccessful Emergency Motion to Borrow should not be viewed as evidence of "gross mismanagement", a term that does not even apply to the facts alleged in the Motion to Dismiss. Section 1112(b)(4)(B) focuses "on the management of the estate and not on the debtor". See In re Briggs-Cockerham, L.L.C., 2010 Bankr. LEXIS 4132 (Bankr. N.D. Tex.), quoting Collier on Bankruptcy, ¶ 1112.04[6][b] (16th ed. rev.)

Following the denial of the Emergency Motion to Borrow, Debtor raised funds through a presale of his artwork. As Debtor is in the business of selling his art, such sale was in the ordinary course of his business. Debtor has thus been able to place insurance on both the Florida Properties. See Goldman Dec. It is curious that while Movants raise the issue of Debtor not maintaining insurance on Estate real property, they fail to address why Movant Jasmin Ismail, who is described as having a "fifty percent interest in the Bayview Property", allowed the property to "go naked" and has not contributed to the insurance for this property.

The argument that the Chapter 11 case is a "bad faith" filing is cursory and consists of nothing more than a string of case citations regarding lack of good faith. Debtor's filing of the Chapter 11 case was absolutely necessary to save his assets for the benefit of all creditors and recover fraudulent conveyances against Movants and the other Ismail family members. As noted above, the filing does not "impede the dissolution proceeding" as alleged in the Motion to Dismiss but leaves all issues regarding support, custody and status in the Superior Court. What the bankruptcy filing "impeded" was the imminent loss of virtually all estate assets to pay

attorneys' fees of Debtor's separated spouse and what the filing created was a venue to recover the fraudulently transferred assets.

It is noteworthy that Movants at every turn in this recently- filed case, have sought to kill the case, even objecting to the employment of the Law Offices of Michael Kogan, APC and Weintraub & Selth, APC to serve as contingent fee counsel to the estate to pursue the fraudulently conveyed assets.  The filing of a bank-ruptcy case to obtain relief from creditors is not bad faith, but what the Bankruptcy Code was designed for.

It is evident that Movants seek to dismiss this bankruptcy case because, through their disproportionate funding advantage, they can seize all his assets in the divorce case and force him to give up the Superior Court case for lack of assets to pursue it.  Debtor now has competent and contingency counsel retained to litigate the claims in Bankruptcy Court, and such an even playing field is the last thing Movants desire.

For all the reasons set forth above, the Motion to Dismiss should be denied.


Dated: April 12, 2016                    WEINTRAUB & SELTH, APC


                                          /s/ *James R. Selth*
                                    By_____
                                          Daniel J. Weintraub
                                          James R. Selth
                                          Elaine V. Nguyen
                                          Attorneys for Debtor, TODD GOLDMAN

## DECLARATION OF TODD GOLDMAN

I, Todd Goldman, hereby declare and state as follows:

1.   I am an individual over the age of eighteen and am the debtor and debtor-in-possession in the above-captioned case.  Each of the facts contained in this declaration are based on my personal knowledge and if called as a witness, I could and would competently testify thereto.

2.   I make this declaration in support of the Opposition to the Motion of Nicole Goldman and Jasmin Ismail to Dismiss, or in the Alternative, to Convert my Chapter 11 Case ("Motion to Dismiss").

3.   My primary assets are my rental property located at 548 Palmetto Rd., Belleair, Florida 33756 (the "Palmetto Property"), my fractional interest in the real property located at 565 Bayview Dr., Belleair, Florida 33756 (the "Bayview Property"), my equitable interest in the real property located at 4672 Brewster Dr., Tarzana, CA 91356 (the "Brewster Property"), and claims for fraud and recovery of fraudulent conveyances relating to the Bayview Property and Brewster Property against my estranged spouse Nicole Goldman ("Nicole"), her mother Jasmin Ismail and Nicole's grandfather Hasan Ismail and aunt Nasim Ismail, as more specifically set forth below.

I.   Bayview Property

A.   During 2004, long before my marriage to Nicole, I sought to purchase     the Bayview Property for use as my primary residence. However, I was unable to obtain the necessary financing.

B.   In an effort to help me, my mother Lenore Goldman agreed to obtain financing for the purchase of the Bayview Property and to take title the Bayview Property in her name.  In exchange, I agreed to satisfy all the financial obligations relating to the Bayview Property, including mortgage payments, property taxes, and maintenance expenses.

C.   The purchase of the Bayview Property closed on June 30, 2004, and title was taken in the name of my parents, David S. Goldman and

Lenore D. Goldman.   I used $337,500 of my own funds as a down payment and a mortgage loan was obtained from Ironstone Bank in my mother's name to complete the purchase.

D.    The Bayview Property was my home and primary residence before I married Nicole on April 3, 2011.

E.    Nicole and I lived in the Bayview Property together for less than a year after we were married.

F.    Nicole never had an ownership interest in the Bayview Property nor did she make financing or maintenance payments for the Bayview Property.  I paid all mortgage payments, property taxes, and maintenance expenses.

G.    In 2014, I became involved with Nicole's family in the purchase of the Brewster Property as described below, which tied up approximately $250,000 of my pre-marital separate property assets. As a result, it became increasingly difficult to pay the expenses associated with the Bayview Property.

H.    Around the same time, my mother expressed her desire to no longer have her name on the title and loan of the Bayview Property and wished to transfer the Bayview Property to me.

I.    In order to accomplish this, the outstanding mortgage debt of the Bayview Property had to be satisfied.  I did not have $550,000 in available funds to pay the amount owed on the Bayview Property's mortgage that would allow my mother to remove her name from the title, and although I attempted to obtain a loan that would enable me to pay off the remaining mortgage amount, I was unable to obtain financing due to my credit.

J.    Accordingly, my mother and I decided to sell the Bayview Property to pay off the outstanding mortgage on the Bayview Property and

1    use the remaining funds for Brewster Property.

2    K.    However, Nicole and her mother Jasmin Ismail ("Jasmin"), had a

3    different plan.  Nicole and Jasmin contrived a scheme to divest me

4    (and my parents) of our interest in the Bayview Property while

5    securing a majority interest in the Bayview Property.  Nicole and

6    Jasmine were aware of the financial situation involving the

7    Bayview Property, and planned to take my home away from me and

8    out of the control of my family.  It later became clear that all along,

9    Nicole intended to divorce me, and I was completely unaware of

10    her intentions.

11    L.    In furtherance of their plan, Jasmin informed me that she had cash

12    in the amount of $550,000 to invest and offered to pay off the

13    mortgage owed on the Bayview Property.  I accepted and Jasmin

14    agreed that the $550,000 payment would be treated like a loan.  I

15    agreed to make interest-only payments on the principal amount until

16    the Bayview Property was sold.  Once the Bayview Property was

17    sold, Jasmin would be repaid the principal amount of $550,000.

18    M.    Unbeknownst to me and contrary to her representations, Jasmin did

19    not have $550,000 in readily available cash as she claimed.  Rather,

20    in order to secure funding for the scheme, Jasmin obtained a line of

21    credit against one of her commercial properties in Ohio to procure

22    the funds.

23    N.    In or about July 2014, Jasmin paid approximately $550,000 to

24    Cenlar (successor to Ironstone Bank) in satisfaction of the mortgage

25    amount owed on the Bayview Property.

26    O.    My mother, who was under the impression that the Bayview

27    Property would be transferred to myself or myself with a

28    Promissory Note from me to Jasmin, did not have reason to suspect

1    of Jasmin's motives.

2    P.    The Bayview Property was then listed for sale for approximately

3    $1.65 million, with a likely value of $1.6 million.

4    Q.    Shortly before my mother was to transfer title to the property,

5    Jasmin, with Nicole's backing and support, insisted that instead of

6    treating the $550,000 as a loan, she be granted a 50% interest in the

7    Bayview Property even though her $550,000 payment did not

8    account for 50% of the value of the Bayview Property which was

9    worth approximately $1.6 million.  Jasmin proposed that Nicole and

10    I would then own the remaining 50% jointly as husband and wife,

11    even though my interest in the property was entirely my pre-marital

12    separate property.

13    R.    Ignorant of Nicole's desire and intention to seek a divorce and

14    oblivious of Nicole and Jasmin's plan to divest me of my interest in

15    the Bayview Property, I reluctantly acquiesced, since, among other

16    things, my mother-in-law had already paid off the remaining

17    mortgage amount.

18    S.    Ultimately, on September 19, 2014, a Quitclaim Deed was recorded

19    on the Bayview Property from my mother to Nicole and I as

20    husband and wife as to a 50% interest, and Jasmin as to a 50%

21    interest.  I do not know why my father David Goldman did not sign

22    the Quitclaim Deed, or the effect of his missing signature.

23    T.    Only three days later, on September 22, 2014, Nicole asked me for

24    a divorce.  The following month, on October 28, 2014, Nicole,

25    through her attorney, filed a petition for divorce.

26    U.    Jasmin then contacted the realtor for the Bayview Property and

27    demanded "as a 75% owner", that the property be taken off the

28    market.  It was thus made very clear that Jasmin and Nicole had set

-12-

up a situation where they could claim 75% ownership of the

Bayview Property while having contributed only 34% of the

property's value ($550,000 ÷ $1,600,000).

II.    Brewster Property

V.    After moving from Florida, and up until around June, 2014, Nicole

and I lived in a rental house located in Sherman Oaks, CA and paid

monthly rent of about $3,900.

W.    Sometime in April, 2014, Nicole told me that her grandfather Hasan

Ismail ("Hasan") and aunt Nasim Ismail ("Nasim") had $1,000,000

in cash they wanted to "put somewhere", and had decided that they

wanted to buy a house for Nicole and I to "help us out."  Hasan and

Nasim told me that they would buy a house and that Nicole and I

could live there for free to save money.  We were also discussing

having another child and wanted to move to a larger house.

X.    In reliance on this proposal, Nicole and I started looking for a

house.  We found the Brewster Property which we liked.  We

contacted the listing realtor (Clare McTeman) and saw the property.

I made an offer to purchase the Brewster Property, which the seller

agreed to sell for the purchase price of $1,250,000.  I paid the initial

deposit of $37,500 for the purchase of the Brewster Property from

my separate property funds.

Y.    In reliance on Hasan and Nasim's offer to pay for a house for

Nicole and I to live in for free, we gave notice to our landlord that

we wanted to end our rental of the Sherman Oaks house early.  The

landlord agreed to modify the term of the lease as he wanted to sell

the house.

Z.    During the inspection period for the purchase of the Brewster

Property, we learned that the previous owner had committed suicide

1    in the property.  I requested that the seller reduce the purchase price

2    by $125,000 due to the disclosure of a suicide in the Property.  The

3    seller refused to lower the price.  I wanted to cancel the purchase

4    agreement, however Nicole, Hasan and Namin did not want to

5    cancel, and insisted on proceeding with the purchase, over my

6    objections.  Nicole insisted they we were making the right move

7    and that her family only wanted to help them.

8    AA.    Before the close of escrow, Nicole, Hasan and Nasim told me that I

9    would need to put my own money into the purchase of the Brewster

10    Property as a down payment.  Nicole knew that I had at least

11    $250,000 in a separate property account.  Pursuant to their demand,

12    I agreed to pay a total of $250,000 towards the purchase of the

13    Brewster Property from my separate property, which was 20% of

14    the purchase price.  These funds came from a pre-marital stock

15    account I held at TD Ameritrade which was never community

16    property.  Hasan and Nasim agreed to pay the remainder of the

17    purchase price of the Property.  Hasan and Nasim agreed that

18    Nicole and I would live in the Brewster Property for free and that

19    we could own the Brewster Property free of any interest of Hasan

20    and Nasim upon payment of the approximately $1,000,000 paid by

21    Hasan and Nasim towards the purchase.

22    BB.    When I agreed to pay $250,000 towards the purchase of the

23    Brewster Property, I assumed that my name would be included on

24    title to the property. However, Hasan and Nasim informed me that

25    title to the Brewster Property would have to be only their names for

26    their "protection."  Hasan and Nasim refused to include my name

27    on title to the Brewster Property, even though I was making a

28    $250,000 payment towards the purchase of the Property.  Trusting

Nicole and her relatives and needing a place to live because our rental house was being sold after their landlord shortened the term of the lease, I still agreed to and did pay a total of $250,000 of my separate funds towards the purchase of the Brewster Property, even though my name was not on title.

CC.   Escrow for the purchase of the Brewster Property closed on June 17, 2014. Title to the Property was conveyed to "Hasan Ismail and Nasim Ismail, Joint Tenants with Rights of Survivorship."

DD.   After escrow closed, I paid approximately $10,000 for improvements to the Brewster Property, consisting of painting, wood floors and other improvements.

EE.   After escrow closed for the purchase of the Brewster Property, Hasan and Nasim immediately breached their promise that Nicole and I would live there for free and instead demanded that I pay rent. When I objected, Hasan and Nasim told me that the monthly payments would be applied to reduce the amount that I would would pay to them to own the Property free of any interest of them. I thought of this as a "rent-to-own" deal. Hasan and Nasim stressed to me that they didn't want to make a profit from me and Nicole. Pursuant to their demands, Nicole made certain payments to Hasan and Nasim from a joint account held with me.

FF.   Although the whole point of moving to the Brewster Property was to live rent-free and save money, instead our rent went up from $3,900 at the Sherman Oaks house to $5,500 at the Brewster Property.

GG.   Although Hasan and Nasim originally represented that the amount paid was to be applied to reduce the amount owed to them to obtain sole ownership of the Brewster Property, they later told me that any

1  monthly payments would only be considered rent, and would not be

2  applied against the amount to be paid to them to obtain sole

3  ownership of the Brewster Property.

4  HH.  Three months after the purchase of the Brewster Property, Nicole

5  asked me for a divorce and the following month she filed a petition

6  for divorce on October 28, 2014. In early November, 2014 Nicole

7  obtained a Temporary Restraining Order and had me evicted from

8  the Brewster Property.  Although Nicole and Nasim agreed that

9  could go back to the Brewster Property to retrieve my personal

10  property, they breached that agreement and refuse to turn over my

11  personal property or allow me to retrieve my personal belongings

12  from the Property.  I still do not have my separate property furniture

13  a year and a half after leaving the Brewster Property, despite a

14  Superior Court Order requiring that it be turned over.

15  II.  In June, 2015, I filed suit against Nicole, Hasan and Nasim to

16  recover my $250,000.  I also recorded a Lis Pendens on the

17  Brewster Property to protect my investment.

18  4.  This Case was filed in order to enable me to restructure my financial affairs,

19  Including the recovery of assets which I transferred in reliance on fraudulent representations.  I

20  seek to consolidate and litigate the fraudulent transfer claims against my estranged wife's family

21  members, which affects my interests in the Bayview and Brewster properties.  My objective in

22  this case is to propose a Plan of reorganization to pay all allowed secured and unsecured claims.

23  5.  On March 28, 2016, my attorneys filed a Notice of Removal in this Court of the

24  action from the Superior Court of the State of California, County of Los Angeles, entitled Todd

25  Goldman v. Hasan Ismail, et. al., bearing Case No. LC102984 ("State Court Action"), pursuant to

26  28 U.S.C. §1452 and Federal Rule of Bankruptcy Procedure 9027.  Said removed action is

27  identified as Adversary No. 2:16-ap-01162-BR, and relates to my transfer of $250,000 of separate

28  property funds used to purchase the Brewster Property.  It is my intention to promptly amend the

1  Complaint (or file a new Complaint) to include the claims to recover fraudulent conveyances

2  relating to the Bayview Property, as well.

3      6.    On or about February 2, 2016, I retained Weintraub & Selth, APC ("WS") to

4  represent me as my general bankruptcy counsel in this bankruptcy case.  After considering several

5  options, I also chose to employ WS and Kogan Law Firm, APC ("KLF") as my special co-

6  counsel on a contingency fee basis to represent me in the fraudulent transfer litigation in this

7  Chapter 11 case.  Said Motion to Employ was filed on April 5, 2016 and is scheduled for hearing

8  on April 26, 2016.

9      7.    I have been trying to get my support payments to Nicole modified for over one year

10  to account for my current income.  My Motion to modify support was originally filed in March,

11  2015 and has been delayed over a year due to Nicole's continuing and multiple false Domestic

12  Violence Restraining Orders filed against me.  At the time of my bankruptcy filing on February 2,

13  2016, the Motion to modify support was scheduled for hearing on July 6, 2016.  On March 29,

14  2016 I successfully obtained an Ex Parte Order advancing the hearing on my Motion to modify

15  support to April 19, 2016, a true and correct copy of which is attached as Exhibit "1".  I expect

16  support to be reduced significantly and am then prepared to immediately pay all post-petition

17  support payments to Nicole as directed by the Superior Court.

18      8.    Following the denial of my Emergency Motion to Borrow, I raised funds through a

19  presale of some of my artwork.  As I am in the business of selling my art, this sale was in the

20  ordinary course of my business.  I was then able to place insurance on both my Florida Properties,

21  and proof of current insurance will be provided prior to the hearing on the Motion to Dismiss.

22  Jasmin, who claims a fifty percent interest in the Bayview Property, has never offered to

23  contribute to the insurance, property taxes or maintenance for this property.

24      I declare under penalty of perjury, under the laws of the United States, that the foregoing

25  is true and correct, and that this declaration was executed by me on the 12 day of April, 2016,

26  at Los Angeles, California.

27

28                      TODD GOLDMAN

# EXHIBIT "1"

| | | FL-300 |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
William W. Oxley, CFLS (SBN 210862)
LAW OFFICES OF WILLIAM W. OXLEY
15233 Ventura Blvd, Suite 1100
Sherman Oaks, CA 91403

TELEPHONE NO.: (818) 995-5771   FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*: Respondent, Todd Goldman

FOR COURT USE ONLY

**FILED**
Superior Court of California
County of Los Angeles

MAR 29 2016

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
Michael Hart

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central

PETITIONER/PLAINTIFF: NICOLE GOLDMAN
RESPONDENT/DEFENDANT: TODD GOLDMAN
OTHER PARENT/PARTY:

CASE NUMBER:
BD 610524

| REQUEST FOR ORDER | | MODIFICATION | | [X] Temporary Emergency Court Order |
|---|---|---|---|---|
| [ ] Child Custody | [ ] Visitation | | | |
| [ ] Child Support | [ ] Spousal Support | | [X] Other *(specify)*: | |
| [ ] Attorney Fees and Costs | | | ORDER TO ADVANCE 7-06-16 RFO RE MOD OF SUPPORT TO 04-19-16 AND ORDER TO SHORTEN TIME | |

1. TO *(name)*: NICOLE GOLDMAN

2. A hearing on this Request for Order will be held as follows: **If child custody or visitation is an issue in this proceeding, Family Code section 3170 requires mediation before or at the same time as the hearing *(see item 7.)***

   a. Date:   Time: 8:30 A.M.   [X] Dept.: 43   [X] Room: 419

   b. Address of court [X] same as noted above [ ] other *(specify)*:

3. Attachments to be served with this *Request for Order*:
   a. A **blank** *Responsive Declaration* (form FL-320)
   b. [ ] Completed *Income and Expense Declaration* (form FL-150) and a **blank** *Income and Expense Declaration*
   c. [ ] Completed *Financial Statement (Simplified)* (form FL-155) and a **blank** *Financial Statement (Simplified)*
   d. [ ] Points and authorities
   e. [X] Other *(specify)*: Declaration of Todd Goldman

Date: March 28, 2016
William W. Oxley, CFLS
(TYPE OR PRINT NAME)

▶ _____ (SIGNATURE)

**[X] COURT ORDER**

4. [X] YOU ARE ORDERED TO APPEAR IN COURT AT THE DATE AND TIME LISTED IN ITEM 2 TO GIVE ANY LEGAL REASON WHY THE ORDERS REQUESTED SHOULD NOT BE GRANTED.

5. [X] Time for [X] service [X] hearing is shortened. Service must be on or before *(date)*:

6. Any responsive declaration must be served on or before *(date)*:

7. The parties are ordered to attend mandatory custody services as follows:

8. [ ] You are ordered to comply with the *Temporary Emergency Court Orders* (form FL-305) attached.

9. [ ] Other *(specify)*: 7/16/16 hrg advanced to 4/19/16.

Date: 03/29/16

_____ MAREN E. NELSON   JUDICIAL OFFICER

RECEIPT #: FIN51
DATE PAID: 03-29-
PAYMENT RECEIVED:
AMOUNT: $60.00
[ ] CHECK
[ ] CASH
[ ] CHANGE
CIT/CASE# LEA/DEF#:
BD610524

To the person who received this *Request for Order*: If you wish to respond to this *Request for Order*, you must file a *Responsive Declaration to Request for Order* (form FL-320) and serve a copy on the other parties at least nine court days before the hearing date unless the court has ordered a shorter period of time. You do not have to pay a filing fee to file the *Responsive Declaration to Request for Order* (form FL-320) or any other declaration including an *Income and Expense Declaration* (form FL-150) or *Financial Statement (Simplified)* (form FL-155).

Form Adopted for Mandatory Use
Judicial Council of California
FL-300 [Rev. July 1, 2012]

**REQUEST FOR ORDER**

Legal Solutions Plus

Family Code, §§ 2045, 2107, 6224, 6226, 6320-6326, 6380-6383
Government Code, § 26826

Page 1 of 4

PETITIONER/PLAINTIFF: NICOLE GOLDMAN
RESPONDENT/DEFENDANT: TODD GOLDMAN
OTHER PARENT/PARTY:

**FL-300**

CASE NUMBER:
BD 610524

## REQUEST FOR ORDER AND SUPPORTING DECLARATION

☐ Petitioner  ☒ Respondent  ☐ Other Parent/Party **requests the following orders:**

1. ☐ **CHILD CUSTODY**    ☐ **To be ordered pending the hearing**
   a. <u>Child's name and age</u>
   b. Legal custody to (name of person who <u>makes decisions about health, education, etc.)</u>
   c. Physical custody to (name of <u>person with whom child will live)</u>

   d. ☐ As requested in form
      ☐ *Child Custody and Visitation Application Attachment* (form FL-311)
      ☐ *Request for Child Abduction Prevention Orders* (form FL-312)
      ☐ *Children's Holiday Schedule Attachment* (form FL-341(C))
      ☐ *Additional Provisions—Physical Custody Attachment* (form FL-341(D))
      ☐ *Joint Legal Custody Attachment* (form FL-341(E))
      ☐ Other (Attachment 1d)

   e. ☐ Modify existing order
      (1) filed on *(date):*
      (2) ordering *(specify):*

2. ☐ **CHILD VISITATION** *(PARENTING TIME)*    ☐ **To be ordered pending the hearing**
   a. As requested in: (1) ☐ Attachment 2a  (2) ☐ *Child Custody and Visitation Application Attachment* (form FL-311)
      (3) ☐ Other *(specify):*
   b. ☐ Modify existing order
      (1) filed on *(date):*
      (2) ordering *(specify):*

   c. ☐ One or more domestic violence restraining/protective orders are now in effect. *(Attach a copy of the orders if you have one.)* The orders are from the following court or courts *(specify county and state):*
      (1) ☐ Criminal: County/state:
          Case No. *(if known):*
      (2) ☐ Family: County/state:
          Case No. *(if known):*
      (3) ☐ Juvenile: County/state:
          Case No. *(if known):*
      (4) ☐ Other: County/state:
          Case No. *(if known):*

3. ☐ **CHILD SUPPORT** *(An earnings assignment order may be issued.)*
   a. <u>Child's name and age</u>
   b. ☐ I request support based on the child support guidelines
   c. <u>Monthly amount requested</u> (if not by guideline)
      $

   d. ☐ Modify existing order
      (1) filed on *(date):*
      (2) ordering *(specify):*

**Notice:** The court is required to order child support based on the income of both parents. It normally continues until the child is 18. You must supply the court with information about your finances by filing an *Income and Expense Declaration* (form FL-150) or a *Financial Statement (Simplified)* (form FL-155). Otherwise, the child support order will be based on information about your income that the court receives from other sources, including the other parent.

FL-300 [Rev. July 1, 2012]

**REQUEST FOR ORDER**

Page 2 of 4

FL-300

| PETITIONER/PLAINTIFF: NICOLE GOLDMAN | CASE NUMBER: |
| RESPONDENT/DEFENDANT: TODD GOLDMAN | BD 610524 |
| OTHER PARENT/PARTY: | |

9. ☐ **I request** that time for service of the Request for Order and accompanying papers be shortened so that these documents may be served no less than *(specify number):*                days before the time set for the hearing. I need to have this order shortening time because of the facts specified in item 10 or the attached declaration.

10. ☒ FACTS IN SUPPORT of orders requested and change of circumstances for any modification are *(specify):*
    ☒ Contained in the attached declaration. *(You may use* Attached Declaration *(form MC-031) for this purpose. The attached declaration must not exceed 10 pages in length unless permission to file a longer declaration has been obtained from the court.)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: March 28, 2016

Todd Goldman
_____
(TYPE OR PRINT NAME)                         (SIGNATURE OF APPLICANT)

**Requests for Accommodations**
Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the proceeding. Contact the clerk's office or go to *www.courts.ca.gov/forms* for *Request for Accommodations by Persons With Disabilities and Response* (form MC-410). (Civil Code, § 54.8.)

FL-300 [Rev. July 1, 2012]                          **REQUEST FOR ORDER**                          Page 4 of 4

FL-305

| | |
|---|---|
| PETITIONER/PLAINTIFF: NICOLE GOLDMAN<br>RESPONDENT/DEFENDANT: TODD GOLDMAN<br>OTHER PARENT/PARTY: | CASE NUMBER:<br>BD 610524 |

## TEMPORARY EMERGENCY COURT ORDERS
### Attachment to *Request for Order* (FL-300)

The court makes the following orders, which are effective immediately and until the hearing:

1. ☐ PROPERTY RESTRAINT
   a. ☐ Petitioner ☐ Respondent ☐ Claimant   is restrained from transferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasi-community, or separate, except in the usual course of business or for the necessities of life.
      ☐ The other party is to be notified of any proposed extraordinary expenditures, and an accounting of such is to be made to the court.
   b. ☐ Both parties are restrained and enjoined from cashing, borrowing against, canceling, transferring, disposing of, or changing the beneficiaries of any insurance or other coverage, including life, health, automobile, and disability, held for the benefit of the parties or their minor child or children.
   c. ☐ Neither party may incur any debts or liabilities for which the other may be held responsible, other than in the ordinary course of business or for the necessities of life.

2. ☐ PROPERTY CONTROL
   a. ☐ Petitioner ☐ Respondent   is given the exclusive temporary use, possession, and control of the following property that the parties own or are buying *(specify):*

   b. ☐ Petitioner ☐ Respondent   is ordered to make the following payments on liens and encumbrances coming due while the order is in effect:
      Debt                    Amount of payment                    Pay to

3. ☐ MINOR CHILDREN
   a. ☐ Petitioner ☐ Respondent   will have the temporary physical custody, care, and control of the minor children of the parties ☐ subject to the other party's rights of visitation as follows:

   b. ☐ Petitioner ☐ Respondent   must not remove the minor child or children of the parties
      (1) ☐ from the state of California.
      (2) ☐ from the following counties *(specify):*
      (3) ☐ other *(specify):*
   c. ☐ Child abduction prevention orders are attached (see form FL-341(B)).
   d. (1) Jurisdiction: This court has jurisdiction to make child custody orders in this case under the Uniform Child Custody Jurisdiction and Enforcement Act (part 3 of the California Family Code, commencing with section 3400).
      (2) Notice and opportunity to be heard: The responding party was given notice and an opportunity to be heard as provided by the laws of the State of California.
      (3) Country of habitual residence: The country of habitual residence of the child or children is ☐ the United States of America ☐ other *(specify):*
      **(4) Penalties for violating this order: If you violate this order, you may be subject to civil or criminal penalties or both.**

4. ☒ OTHER ORDERS *(specify):*   Respondent's RFO is advanced from July 6, 2016 to April 19, 2016
   ☐ Additional orders are listed on Attachment 4.

Date: _____                    _____
                                              JUDGE OF THE SUPERIOR COURT

5. **The date of the court hearing is** *(insert date when known):*

---

### CLERK'S CERTIFICATE
I certify that the foregoing is a true and correct copy of the original on file in my office.

[SEAL]         Date: _____   Clerk, by _____, Deputy

Form Adopted for Mandatory Use
Judicial Council of California
FL-305 [Rev. July 1, 2012]

**TEMPORARY EMERGENCY COURT ORDERS**

Legal Solutions Plus

Family Code, §§ 2045, 6224, 6226, 6302,
6320–6326, 6380–6383

Page 1 of 1

## DECLARATION OF TODD GOLDMAN IN SUPPORT OF HIS REQUEST

## FOR A TEMPORARY EMERGENCY ORDER

I, TODD GOLDMAN, declare, that I am the Respondent in this action, this declaration is true and correct, the facts contained herein are within my personal knowledge, and, if sworn as a witness I would and could competently testify thereto.

This declaration is in lieu of personal testimony, pursuant to CCP Sections 2009 and California Rules of Court 5.118, *Reifler vs. Superior Court (1974) 39 CA3d 479, and Marriage of Stevenot (1984) 154 CA3d 1051*. Therefore, I request that this declaration be received as evidence and that the Court permit further offers of proof, other testimony and documentary evidence at time of hearing or as otherwise appropriate.

### Request for Relief

1.     The purpose of this declaration is to provide this Court with the factual basis for my Ex-Parte Application **to advance** my previously filed 03/25/15 Request for Order re modification of support from its current scheduled date of July 6, 2016, to April 19, 2016 and/or a Request to Shorten Time.

2.     I recently filed Chapter 11 bankruptcy due to the mounting debt and high cost of over-litigation in this case.   In doing so, I am required to disclose all financial transactions to the bankruptcy court, including payments to the Court-Appointed Child Custody Evaluator.

3.     The EMERGENCY was CREATED by Petitioner when on 03-23-16 she objected to the payment of the evaluator.   Petitioner filed a formal objection in the bankruptcy court to deny my payment.   A true and correct copy of Nicole Goldman's Opposition to Debtor in Possession's Emergency Motion Pursuant to U.S.C. § 364 for Interim and Final Orders Authorizing Debtor to Obtain Post-Petition Financing and Declaration of Nicole Goldman in Support Thereof.   A true and correct copy of which is attached hereto as **Exhibit "A"** and is incorporated herein by this reference.

4.    The Bankruptcy court gave its tentative decision to grant Petitioner's request because I am allegedly delinquent in my support payments.   I contend that I have OVERPAID Petitioner support to-date, but until my 03-25-15 RFO is adjudicated in the family court, the bankruptcy court will deny my pending funds for the custody evaluation which was ordered by this court.

5.    For this reason, I am respectfully requesting that my 03-25-15 RFO which is now calendared for 07-06-16 be advanced to 04-19-16 (and trail the contempt hearing).

6.    By merely shortening time to hear my RFO on support which has been continued for almost a year against my wishes, <u>I will be able to adjudicate this issue prior to the bankruptcy court return date on 04-26-16</u>.

### Background:

7.    I recently borrowed money, by way of hard money loan and with a high interest rate, out of desperation to pay for a custody evaluator and to retain family lawyers for my upcoming move-away trial as I have no money in which to pay either.

8.    As the court knows, the Petitioner has spent no money of her own so far and she has had me pay her fees while litigating this case.   I believe her goal is to make me give-up full custody of our daughter. By way of example, Petitioner owes her first lawyer, Michael McGuire, $150,000 and her most recent lawyer, Ron Brot, $300,000, both of whom filed Borson Motions in this matter.

9.    To sabotage the evaluation, <u>which was ordered by this court over Petitioner's objection</u>, the Petitioner has now filed a formal objection in the bankruptcy court so that I do not have access to $7,500.   Her goal, obviously, is to deny me a fair opportunity to respond to the evaluation and thus deny me due process – hence the irreparable harm / emergency.

10.    My motion for support has been pending since 03-25-15 and I have waited patiently.   It has been delayed over a year due to Petitioner's continuing and multiple self-created Domestic Violence Restraining Orders against me.

- 2 -

11. I cannot have access to this loan until the family court adjudicates the pending modification of child and spousal support scheduled for hearing on 07-06-15.

12. As I previously stated, I contend that I have OVERPAID Petitioner support to-date, but until this issue is adjudicated in the family court, the bankruptcy court is holding up approving my loan which is desperately needed, as well as threatening to dismiss my bankruptcy case altogether if my support is not paid in full which I clearly can not afford based on my current financials and income and expense report.

13. I have since paid the retainer of $7,500 for the evaluator by other means by borrowing from my family but I still need the loan approved by the bankruptcy court as it is estimated the total cost of the evaluation will be $22,000 to $30,000.

14. I respectfully request that the Court merely shorten time to hear my RFO on support from July 6, 3016 to April 19, 2016 so I don't get kicked-out of bankruptcy court. I am simply trying to reorganize my debt and pay back my creditors while at the same time pay the evaluator, which was previously ordered by this court.


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 25th day of March 2016, at Sherman Oaks, California.

TODD GOLDMAN,
Respondent

DECLARATION OF TODD GOLDMAN

# EXHIBIT "A"

1   GATES, O'DOHERTY, GONTER & GUY, LLP
    Lisa Torres, Cal. Bar No. 137945
2   15373 Innovation Drive, Suite 170
    San Diego, California 92128
3   Telephone: (858) 676-8600
    Facsimile: (858) 676-8601
4   Email: ltorres@gogglaw.com

5   Attorneys for Nicole Goldman

6

7

8                   UNITED STATES BANKRUPTCY COURT

9            CENTRAL DISTRICT OF CALIFORNIA-LOS ANGELES DIVISION

10  In re:                                Case No. 2:16-BK-11330-BR

11                                        Chapter 11
    TODD GOLDMAN
12                                        NICOLE GOLDMAN'S OPPOSITION
            Debtor and Debtor-In-Possession   TO DEBTOR IN POSSESSION'S
13                                        EMERGENCY MOTION PURSUANT
                                          TO 11 U.S.C. § 364 FOR INTERIM AND
14                                        FINAL ORDERS AUTHORIZING
                                          DEBTOR TO OBTAIN POST-PETITION
15                                        FINANCING AND DECLARATION OF
                                          NICOLE GOLDMAN IN SUPPORT
16                                        THEREOF

17                                        Hearing
                                          Date:
18                                        Time:   March 15, 2016
                                          Dept:   2:00 p.m.
19                                                Courtroom 1668
                                                  225 E. Temple Street
20                                                Los Angeles, CA 90012

21      Nicole Goldman ("N. Goldman"), the spouse of Todd Goldman ("Debtor") and a Domestic

22  Support Obligation creditor of the Debtor, hereby opposes the Debtor's Emergency Motion Pursuant to

23  11 U.S.C. § 364 for Interim and Final Orders Authorizing Debtor to Obtain Post-Petition Financing

24  ("the Emergency Motion") and in support thereof, respectfully states as follows:

25  ///

26  ///

27  ///

28

# I.

## SUMMARY OF ARGUMENT

The Emergency Motion seeks the Debtor's authorization under 11 U.S.C. § 364 to obtain a short-term secured loan due and payable in September 2016 in the principal amount of $40,000. The proposed secured loan requires the Debtor to pay total interest in the amount of $10,000, which amounts to an annual interest rate of fifty-four percent (54%). The Emergency Motion states the Debtor needs the loan on an emergency basis to immediately pay expenses including: real property insurance; fees to a family law attorney and criminal attorney; fees to a custody evaluator; the Debtor's rent and car payment and utilities. Notably, the Emergency Motion fails to provide for the Debtor's payment of the domestic support obligations under 11 U.S.C. § 101(14A) payable to N. Goldman in the approximate amount of $12,600 each month. N. Goldman's domestic support obligations are entitled to first priority under 11 U.S.C. § 507(a) (1).

The Debtor and N. Goldman have been engaged in an extensively litigated and acrimonious divorce proceeding since October 28, 2014. During the marriage, N. Goldman's relatives financially assisted the Debtor and N. Goldman with several real estate transactions. N. Goldman's relatives have been dragged into the dissolution proceeding and into related state court litigation regarding the real estate transactions.[1] Debtor filed his Chapter 11 petition initiating this bankruptcy case on February 2, 2016, three days before a critical hearing scheduled for February 4, 2016 in the Dissolution Proceeding. A hearing before the Family Court was scheduled for hearing on February 4, 2016, wherein N. Goldman requested an award of $200,000 in attorney fees payable to N. Goldman's family law attorneys. N. Goldman's attorneys' fee request, set for hearing on February 4, 2016, also sought an order from the Family Court authorizing the sale of real property jointly owned by the Debtor, N. Goldman and N. Goldman's mother. N. Goldman submits that Debtor's petition filing was filed to block the Family Court from ordering the sale of the jointly owned real property to pay N. Goldman's attorney fees. (See ¶ 15 of the Declaration of N. Goldman ("The N. Goldman Dec.").)

---

[1] Debtor filed a Motion seeking an extension of the Court's deadline to file a plan on the ground the Debtor is investigating the alleged fraudulent conveyance claims against N. Goldman and her family. (Doc. 18). Debtor's Motion and Statement of Affairs listing pending lawsuits fails to disclose that Debtor filed a fraudulent conveyance complaint against N. Goldman and her family members in the Superior Court for the State of California initiating Case No. LC1102984 on July 1, 2015.

Case 2:16-bk-11330-BR    Doc 28    Filed 03/11/16    Entered 03/11/16 09:13:34    Desc
Main Document    Page 3 of 71

1    N. Goldman opposes Debtor's Emergency Motion on the grounds: 1) the Emergency Motion

2    seeks authorization to pay unauthorized expenses; 2) the Debtor has not established that paying the

3    professionals' fees will confer any benefit to the Debtor's bankruptcy estate; 3) the Debtor has not

4    established the loan terms are a sound exercise of the Debtor's business judgment; and 4) the

5    Emergency Motion fails to include the Debtor's priority Domestic Support Obligations in the Debtor's

6    expense budget.

7        The Emergency Motion fails to disclose that Debtor is required under numerous orders issued in

8    the Debtor's and N. Goldman's dissolution proceeding to pay N. Goldman's domestic support

9    obligations totaling approximately $12,600 per month. Debtor's unpaid domestic support obligation

10   debt to N. Goldman and her attorneys exceeds $150,000. Since the Debtor's petition date of February 2,

11   2016, Debtor has failed to pay N. Goldman any of the domestic support obligations due under the terms

12   of the Family Court's orders. (See ¶ 11 of the N. Goldman Dec.). Debtor's post-petition failure to

13   comply with court orders and make the domestic support obligation payments is grounds for dismissal

14   of his case under 11 U.S.C. § 1112(b)(4)(P). *In re Effron*, 535 B.R. 516 (D. Puerto Rico 2014) (Court

15   denied individual Chapter 11 Debtor's request for stay of dismissal order based on Debtor's failure to

16   pay domestic support obligations to his spouse). N. Goldman will be filing a separate motion to

17   dismiss or convert Debtor's case under 11 U.S.C. §§ 1112 and 305 shortly.

18                                    II.

19                         FACTUAL BACKGROUND

20       1.    Debtor filed a Chapter 11 petition in the above-captioned Court on February 2, 2016

21   ("the Petition Date"). Debtor's petition was filed three days before a critical hearing scheduled for

22   February 5, 2016 in the dissolution proceeding pending in the Superior Court of the State of California,

23   County of Los Angeles, Case No. BD610-524 ("the Dissolution Proceeding"). (See ¶ 15 of the N.

24   Goldman Dec.).

25       2.    Nicole Goldman ("N. Goldman") and the Debtor were married on April 13, 2011 and

26   they have one minor child born in 2011.

27       3.    Debtor's mother, Lenore Goldman ("L. Goldman") owned real property located at 565

28   Bayview Drive, Belleair, Florida 33756 ("the Bayview Property"). L. Goldman was an obligor on a

3

1   secured loan encumbering the Bayview Property; the secured loan had a principal balance of

2   approximately $553,329.52 on September 12, 2014 ("the Bayview Secured Loan"). In or about

3   September 2014, when Debtor's Parents sought to liquidate or transfer their ownership in the Bayview

4   Property, Debtor and N. Goldman obtained financial assistance from N. Goldman's mother, Jasmin

5   Ismail ("J. Ismail") to acquire the Bayview Property. J. Ismail paid off L. Goldman's Bayview

6   Secured Loan in the amount of $553,329.52. In consideration for J. Ismail's payment, on September

7   12, 2014, L. Goldman as grantor, conveyed her interest in the Bayview Property to: Debtor and N.

8   Goldman as husband and wife, as to a fifty percent (50%) interest; and J. Ismail, a single woman, as to

9   a fifty percent (50%) interest. A true and correct copy of the Quitclaim Deed is attached as Exhibit

10  "A" to the N. Goldman Dec.

11      4.    In or about June 2014, the Debtor desired to purchase a home located at 4672 Brewstar,

12  Tarzana, California 91356 ("the Brewster Property"). The purchase price for the Brewster Property

13  was approximately $1,300,000. N. Goldman's relatives, Hasan Ismail ("H. Ismail") and Nasim Ismail

14  ("N. Ismail") agreed to purchase the Brewster Property and to rent the property to Debtor and N.

15  Goldman until the Debtor and N. Goldman had sufficient funds to purchase the Brewster Property. The

16  Debtor and N. Goldman contributed $250,000 towards the $1,300,000 purchase price of the Brewster

17  Property. The Brewster Property was the custodial home of the Debtor's and N. Goldman's minor

18  daughter. N. Goldman moved out of the Brewster Property recently and has filed a motion in the

19  Dissolution Proceeding seeking authority to move out of state with her daughter. N. Goldman, H.

20  Ismail and N. Ismail would like to sell the Brewster Property and use the sale proceeds to pay the

21  Debtor and N. Goldman for their $250,000 contribution. To date, Debtor's refusal to remove the lis

22  pendens he filed against the Brewster Property in December 2014 has prevented H. Ismail and N.

23  Ismail from selling the Brewster Property. (¶ 3 of the N. Goldman Dec.).

24      5.    On October 28, 2014, Nicole Goldman filed a dissolution of marriage action in the

25  Superior Court of the State of California, County of Los Angeles, Case No. BD610-524 ("the

26  Dissolution Proceeding"). (¶ 2 of the N. Goldman Dec.).

27

28

4

6.     On November 4, 2014, the Court in the Dissolution Proceeding issued a Domestic Violence Temporary Restraining Order ("the November 2014 DVTRO") against the Debtor. A true and correct copy the November 2014 DVTRO is attached as Exhibit "B" of the N. Goldman Dec.

7.     On November 24, 2014, N. Goldman and the Debtor entered into a Stipulation and Order Regarding Personal Conduct Orders and Support ("the November 2014 Support Stipulation and Order"). A true and correct copy of the November 2014 Support and Stipulation and Order is attached as Exhibit "C" to the N. Goldman Dec. The November 2014 Support and Stipulation Order provided in relevant part that commencing on December 1, 2014, and continuing until further order of the Court or written agreement of the Parties, the Debtor shall pay N. Goldman $4,000 per month as temporary support and that he shall also pay rent ($5,500 per month), utilities and property maintenance (approximately $1,800 per month), N. Goldman's car payment ($600 per month), their daughter's school tuition (approximately $700 per month) and health insurance coverage for N. Goldman and their daughter.

8.     In February 2015, the Court in the Dissolution Proceeding issued a second Domestic Violence Temporary Restraining Order against Debtor ("the February 2015 DVTRO"). A true and correct copy of the February 2015 DVTRO is attached hereto as Exhibit "D" to the N. Goldman Dec.

9.     On February 11, 2015, N. Goldman filed a Request for Order for Attorney Fees and Costs in the Dissolution Proceeding. The matter was heard on June 30, 2015. On August 12, 2015, the the Court in the Dissolution Proceeding ordered the Debtor to pay the sum of $65,000 to N. Goldman's counsel Brot & Gross, LLP ("the August 2015 Fee Order"). A true and correct copy of the Fee Order is attached as Exhibit "E" to the N. Goldman Dec. Debtor has not made any payments to Brot & Gross required by the Fee Order. Id.

10.     Based on continuing acts of abuse, the Court in the Dissolution Proceeding issued a third Domestic Violence Temporary Restraining Order against Debtor ("the May 2015 DVTRO"). A true and correct copy of the May 2015 DVTRO is attached hereto as Exhibit "F" to the N. Goldman Dec.

11.     On April 6, 2015, the Debtor and N. Nicole reaffirmed the support orders contained in the November 26, 2014 Stipulation and Order in a further Stipulation and Order dated April 6, 2015. A

NICOLE GOLDMAN'S OPPOSITION TO DEBTOR IN POSSESSION'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. § 364 FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING AND DECLARATION OF NICOLE GOLDMAN IN SUPPORT THEREOF

1  true and correct copy of the April 2015 Stipulation and Order is attached as Exhibit "G" to the N.

2  Goldman Dec.

3      12.    The Debtor has not paid the support orders to N. Goldman required under the terms of

4  the November 2014 Support Stipulation and Order and the April 2015 Stipulation and Order. Debtor

5  also terminated a life insurance policy for the benefit of his daughter and violated the DVTROs. (¶ 11

6  of the N. Goldman Dec.).

7      13.    On July 1, 2015, Debtor filed a Complaint against H. Ismail, N. Ismail and N. Goldman

8  in the Superior Court for the State of California initiating Case No. LC1102984 related to the Brewster

9  Property. In addition, on December 9, 2014, Debtor filed a lis pendens against the Brewster Property

10  ("the Lis Pendens"). Due to the Lis Pendens, H. Ismail and N. Ismail have not been able to sell the

11  Brewster Property. H. Imsail and N. Ismail have offered to sell the Brewster Property and to reimburse

12  N. Goldman and the Debtor for their $250,000 contribution to the purchase price, but to date, the

13  Debtor refuses to remove the lis pendens. (¶ 12 of the N. Goldman Dec.).

14      14.    On July 15, 2015, N. Goldman filed an Order to Show Cause and Affidavit for

15  Contempt in the Dissolution Proceeding against Debtor for his failure to pay court-ordered support,

16  violations of the DVTRO, and violations of the automatic restraining orders arising under California

17  law ("the "First OSC re Contempt"). (¶ 13 of the N. Goldman Dec.).

18      15.    Following the filing of the First OSC re Contempt, Debtor continued to disobey the

19  court-ordered support, unilaterally terminated Petitioner's health and car insurance without her

20  knowledge in violation of the automatic restraining orders and failed to pay court-ordered attorneys'

21  fees. Accordingly, on September 4, 2015, N. Goldman filed a second Order to Show Cause and

22  Affidavit for Contempt against Debtor. ("the Second OSC re Contempt). (¶ 14 of the N. Goldman

23  Dec.).

24      16.    On November 25, 2015, N. Goldman filed a Request for Attorney Fees and Costs in the

25  Dissolution Proceeding which was set for hearing on February 5, 2016 ("the November 2015 Motion").

26  N. Goldman's November 2015 Motion requested that the Court order the Debtor to pay at least an

27  additional $200,000 as a contributive share of N. Goldman's attorney fees and costs and that the Court

28  in the Dissolution Proceeding order the sale of the Bayview Property, the parties' proceeds of which

NICOLE GOLDMAN'S OPPOSITION TO DEBTOR IN POSSESSION'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. § 364 FOR INTERIM AND FINAL
ORDERS AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING AND DECLARATION OF NICOLE GOLDMAN IN SUPPORT THEREOF

1   would be used for the payment of the Court's August 2015 Fee Orders well as an additional fee order

2   pursuant to the Request. (¶ 15 of the N. Goldman Dec.).

3        17.     Prior to the Petition Date, the Debtor had not paid the amounts and obligations due

4   under the Support Orders and the Fee Orders issued in the Dissolution Proceeding. N. Goldman

5   calculates that Debtor has failed to pay $17,800 in the $4,000 monthly support payments; $71,500 in

6   rent payable under the Support Orders; $22,555.25 in other bills ordered by the Court and the $65,000

7   Fee Order. (¶ 11 of the N. Goldman Dec.). Following the Petition Date, Debtor has not paid the

8   amounts due on March 1, 2016 under the Support Orders and Fee Orders. Id.

9                                **III.**

10   **DEBTOR HAS NOT ESTABLISHED THAT THE SECURED LOAN WILL BENEFIT THE**

11   **BANKRUPTCY ESTATE OR THAT THE SECURED LOAN WILL NOT CONFER AN**

12   **UNWARRANTED BENEFIT TO THE SECURED LENDER.**

13        Debtor's Emergency Motion argues the Court should approve the Debtor's secured loan in the

14   amount of $40,000 to pay certain "emergency" expenses ("the Secured Loan"). Notably, the

15   Emergency Motion does not address the Debtor's Domestic Support Obligations, and Debtor's

16   proposed budget for the emergency loan does not include Debtor's Domestic Support Obligations

17   payable to N. Goldman. The 2005 amendments to the Bankruptcy Code include as a public policy,

18   payment of post-petition domestic support obligations as a necessary requirement for individual debtors

19   to enjoy bankruptcy protection. *Law Offices of Miriam G. Altman, P.C. v. Johnson (In re Johnson)*,

20   445 B.R. 50, 59-60 (Bankr. D. Mass. 2011); *In re Effron*, 535 B.R. 516 (Bankr. D. Puerto Rico 2014).

21        N. Goldman opposes the Debtor's Emergency Motion because the Secured Loan is

22   overreaching and commercially unreasonable, even for a financially distressed debtor-in possession.

23   Further, Debtor has not established the Secured Loan will benefit the Debtor's bankruptcy estate and

24   the creditors. In addition, N. Goldman opposes the Emergency Motion on the ground Debtor's

25   proposed loan budget seeks to pay professional fees that are not authorized.

26        Among the expenses the Debtor seeks to pay with the Secured Loan proceeds are his family law

27   and criminal attorneys. The Emergency Motion states the Debtor needs to pay $10,000 to his family

28   law attorneys and $2,400 to his criminal attorney next week. It is unclear if the payments are for pre-

NICOLE GOLDMAN'S OPPOSITION TO DEBTOR IN POSSESSION'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. § 364 FOR INTERIM AND FINAL
ORDERS AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING AND DECLARATION OF NICOLE GOLDMAN IN SUPPORT THEREOF

1    petition or post-petition services.  If the Debtor's proposed payment is for pre-petition services, the

2    payment is not authorized under the Bankruptcy Code. Debtor-in-possession financing may not be used

3    to pay prepetition debt in absence of a confirmed reorganization plan. *In re Berry Good, LLC*, 400 B.R.

4    741 (Bankr. D. Ariz. 2008).   If the payment to the professionals is for post-petition services, such

5    payments are not authorized until the Debtor obtains authority to employ and compensate the

6    professionals. *In re Goldstein*, 383 B.R. 497, 504 (Bankr. C.D. Cal. 2007) (individual chapter 11

7    debtors are not permitted to use their post-petition income that is property of the bankruptcy estate

8    under 11 U.S.C. § 1115 to pay divorce counsel unless such an expense is authorized by the Bankruptcy

9    Court). To date, Debtor has not filed an application to employ any attorneys other than his bankruptcy

10   counsel.  Should Debtor file applications to employ his divorce attorney and criminal attorney, it is

11   doubtful that Debtor can establish that their employment benefits the bankruptcy estate and creditors

12   instead of his personal interests. *In re Engle*, 190 B.R. 206, 209-210 (Bankr. N.J. 1995) (court denied

13   Debtor's application to employ criminal counsel because the criminal attorney's services did not benefit

14   the bankruptcy estate as required under 11 U.S.C. § 330(a), but rather the Debtor personally); *In re

15   Johnson*, 433 B.R. 626 (Bankr. S.D. Tex. 2010) (Debtor failed to establish the employment of divorce

16   counsel was in the best interests of the estate, rather than just debtor personally).  *See also, Matter of

17   EDC Holding Co.*, 676 F.2d 945, 947-948 (7th Cir. 1982) (since stated purpose of using a portion of the

18   loan to pay unauthorized legal expenses was improper, lender could not be granted special priority with

19   respect to that portion of the loan).

20         In addition, the Emergency Motion should not be approved because the Debtor fails to establish

21   he has exercised sound business judgment in agreeing to the terms of the Secured Loan.  While certain

22   favorable terms may be permitted in post-petition financing agreements, bankruptcy courts do not allow

23   terms in financing arrangements that convert the bankruptcy process from one designed to benefit all

24   creditors to one designed for the unwarranted benefit of the post-petition lender.  *In re Defender Drug

25   Stores, Inc.*, 145 B.R. 312, 317 (9th Cir. B.A.P. 1992).  In *Defender Drug Stores*, the Panel stated:

26            While certain favorable terms may be permitted as a reasonable exercise of
           the debtor's business judgment, bankruptcy courts do not allow terms in
27         financing arrangements that convert the bankruptcy process form one

28

1    designed to benefit all creditors to one designed for the unwarranted benefit of the post petition lender. Thus, courts look to whether the proposed terms would prejudice the powers and rights that the Code confers for the benefit of all creditors and leverage the Chapter 11 process by granting the lender excessive control over the debtor or its assets as to unduly prejudice the rights of other parties in interest. *Id.*

5    Here, the Secured Loan is overreaching and provides an unwarranted benefit to the the secured

6    lender. The Secured Loan provides that in exchange for $40,000 payable in March 2016, Debtor will

7    repay the lender $50,000 in September 2016. Thus, the Debtor has agreed to pay the lender "interest"

8    totaling $10,000 or annual interest at the rate of fifty-four percent (54%). The terms of the Secured

9    Loan are not commercially reasonable, even for a distressed borrower such as the Debtor.

10    In addition, the Emergency Motion is misleading because it states the Debtor has agreed to

11    secure the loan with 100 paintings and 100 prints on consignment at Quality Art Auctions, Inc.

12    However, the promissory note attached to the Motion grants the lender a security interest in **all** of the

13    Debtor's fine art, including the art located at Quality Art Auctions, Inc. "This Note shall be secured by

14    a UCC-1 against all of Maker's fine art, **including Maker's fine art that is currently on consignment**

15    **with Quality Art Auctions, Inc. . . . . Maker pledges all of his fine art as collateral for this Note."** The

16    Debtor's Statement of Affairs states that the value of the Debtor's fine art is "unknown." (Emphasis

17    added) (Doc. 12, p. 5). Debtor supports himself as an artist. Therefore, the value of all of the

18    Debtor's fine art is likely substantial. The Secured Loan grants the lender excessive control over all of

19    the Debtor's art and should not be approved. At the very least, before the Court authorizes any secured

20    loan in which the Debtor would convey a security interest in virtually all of his fine art, N. Goldman

21    respectfully requests that the Court order that the Debtor provide the Court and parties in interest with

22    an inventory of his art and that he provide a credible fair market valuation of the art. The value of the

23    Debtor's art should be disclosed in the Debtor's Bankruptcy Schedules.

24    ///

25    ///

26    ///

27    ///

28    ///

9

1

IV.

2

CONCLUSION

3        Wherefore, based on the above and the foregoing, N. Goldman respectfully requests that the

4   Debtor's Emergency Motion be denied.

5

6                                          Respectfully Submitted,

7   DATED:  March 10, 2016                 Gates, O'Doherty, Gonter & Guy, LLP

8

9                                          By:   /s/ Lisa Torres

10                                              Lisa Torres,
                                               Attorney for Nicole Goldman

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NICOLE GOLDMAN'S OPPOSITION TO DEBTOR IN POSSESSION'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. § 364 FOR INTERIM AND FINAL
ORDERS AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING AND DECLARATION OF NICOLE GOLDMAN IN SUPPORT THEREOF

## DECLARATION OF NICOLE GOLDMAN

I, Nicole Goldman, hereby declare and state as follows:

1.      I am an individual over the age of eighteen and am Debtor's spouse and Debtor's creditor in the above-captioned case.  The statements made in this Declaration are based on my personal knowledge unless stated upon information and belief.  If called as a witness, I could and would competently testify thereto.

2.      The Debtor and I were married on April 13, 2011 and we have one minor daughter born on August 13, 2011. On October 28, 2014, I filed a dissolution of marriage action in the Superior Court of the State of California, County of Los Angeles, Case No. 610-524 ("the Dissolution Proceeding").

3.      Debtor's mother, Lenore Goldman ("L. Goldman") owned real property located at 565 Bayview Drive, Belleair, Florida 33756 ("the Bayview Property").   I am informed and believe that L. Goldman was an obligor on a secured loan encumbering the Bayview Property; the secured loan had a principal balance of approximately $553,329.52 on September 12, 2014 ("the Bayview Secured Loan"). In or about September 2014, when L. Goldman sought to liquidate or transfer her ownership in the Bayview Property, I obtained financial assistance from my mother, Jasmin Ismail ("J. Ismail") to acquire the Bayview Property.  My mother, J. Ismail, paid off L. Goldman's Bayview Secured Loan in the amount of $553,329.52.  In consideration for J. Ismail's payment, on September 12, 2014, L. Goldman as grantor conveyed her interest in the Bayview Property to: Debtor and N. Goldman as husband and wife, as to a fifty percent (50%) interest; and J. Ismail, a single woman, as to a fifty percent (50%) interest.   A true and correct copy of the Quitclaim Deed is attached as Exhibit "A" hereto.

4.      In or about June 2014, the Debtor desired to purchase a home located at 4672 Brewster, Tarzana, California 91356 ("the Brewster Property").  The purchase price for the Brewster

1  Property was approximately $1,300,000. My grandfather, Hasan Ismail ("H. Ismail") and my aunt,

2  Nasim Ismail ("N. Ismail") agreed to purchase the Brewster Property and to rent the property to Debtor

3  and I until we had sufficient funds to purchase the Brewster Property. The Debtor and I wired

4  $250,000 towards the $1,300,000 purchase price of the Brewster Property. My daughter and I recently

5  moved out of the Brewster Property. I filed a motion in the Dissolution Proceeding seeking authority to

6  move out of state with my daughter. My family has offered to sell the Brewster Property and use the

7  sale proceeds to pay the Debtor and me for our $250,000 contribution towards the purchase price. To

8  date, Debtor's refusal to remove the lis pendens he filed against the Brewster Property in December

9  2014 has prevented my family from selling the Brewster Property.

10      5.      On November 4, 2014, the Court in the Dissolution Proceeding issued a Domestic

11  Violence Temporary Restraining Order ("the November 2014 DVTRO") against the Debtor. A true

12  and correct copy the November 2014 DVTRO is attached as Exhibit "B" hereto.

13      6.      On November 24, 2014, the Debtor and I entered into a Stipulation and Order Regarding

14  Personal Conduct Orders and Support ("the November 2014 Support Stipulation and Order"). A true

15  and correct copy the November 2014 Support and Stipulation and Order is attached as Exhibit "C"

16  hereto. The November 2014 Support and Stipulation Order provided in relevant part that commencing

17  on December 1, 2014, and continuing until further order of the Court or written agreement of the

18  parties, the Debtor shall pay me: $4,000 per month as temporary support; rent ($5,500 per month),

19  utilities and property maintenance (approximately $1,800 per month); my car payment (approximately

20  $600 per month); our daughter's school tuition (approximately $700 per month) and health insurance

21  coverage for my daughter and me.

22      7.      In February 2015, the Court in the Dissolution Proceeding issued a second Domestic

23  Violence Temporary Restraining Order against Debtor ("the February 2015 DVTRO"). A true and

24  correct copy of the February 2015 DVTRO is attached hereto as Exhibit "D" hereto.

25

26

27

28

12

8.     On February 11, 2015, I filed a Request for Order for Attorney Fees and Costs in the Dissolution Proceeding. The matter was heard on June 30, 2015. On August 12, 2015, the Court in the Dissolution Proceeding ordered the Debtor to pay the sum of $65,000 to N. Goldman's counsel Brot & Gross, LLP ("the August 2015 Fee Order"). A true and correct copy of the Fee Order is attached as Exhibit "E" hereto. I am informed and believe that Debtor has not made any payments to Brot & Gross required by the Fee Order.

9.     Based on continuing acts of abuse, the Court in the Dissolution Proceeding issued a third Domestic Violence Temporary Restraining Order against Debtor ("the May 2015 DVTRO"). A true and correct copy of the May 2015 DVTRO is attached hereto as Exhibit "F" hereto.

10.     On April 6, 2015, the Debtor and I reaffirmed the support orders contained in the November 26, 2014 Stipulation and Order in a further Stipulation and Order dated April 6, 2015. A true and correct copy of the April 2015 Stipulation and Order is attached as Exhibit "G" hereto.

11.     The Debtor has not paid the support orders to me required under the terms of the November 2014 Support Stipulation and Order and the April 2015 Stipulation and Order. In addition, the Debtor also terminated a life insurance policy for the benefit of our daughter and violated the DVTROs. I calculate that as of the Petition Date the Debtor owes me: $17,800 in the unpaid $4,000 monthly support payments; $71,500 in unpaid rent payable under the Support Orders; $22,555.25 in other unpaid bills ordered by the Family Court and the $65,000 Fee Order. Following the Petition Date, Debtor has not paid me the amounts due on March 1, 2016 in the approximate amount of $12,600 (excluding the attorney fee order) under the Support Orders and Fee Orders.

12.     On July 1, 2015, Debtor filed a Complaint against me, H. Ismail and N. Ismail in the Superior Court for the State of California initiating Case No. LC1102984 related to the Brewster Property. In addition, on December 9, 2014, Debtor filed a lis pendens against the Brewster Property ("the Lis Pendens"). Due to the Lis Pendens, H. Ismail and N. Ismail have not been able to sell the

Brewster Property. H. Ismail and N. Ismail have offered to sell the Brewster Property and to reimburse the Debtor and me for our $250,000 contribution to the purchase price. To date the Debtor refuses to remove the lis pendens so that the Brewster Property can be sold.

13.    On July 15, 2015, I filed an Order to Show Cause and Affidavit for Contempt in the Dissolution Proceeding against Debtor for his failure to pay court-ordered support, violations of the DVTRO, and violations of the automatic restraining orders arising under California law ("the "First OSC re Contempt").

14.    Following the filing of the First OSC re Contempt, Debtor continued to disobey the court-ordered support, unilaterally terminated my health and car insurance without my knowledge in violation of the automatic restraining orders and failed to pay court-ordered attorneys' fees. Accordingly, on September 4, 2015, I filed a second Order to Show Cause and Affidavit for Contempt against Debtor. ("the Second OSC re Contempt).

15.    On November 25, 2015, I filed a Request for Attorney Fees and Costs in the Dissolution Proceeding which was set for hearing on February 5, 2016 ("the November 2015 Motion"). The November 2015 Motion requested that the Court order the Debtor to pay at least an additional $200,000 as a contributive share of my attorney fees and costs, and that the Court in the Dissolution Proceeding order the sale of the Bayview Property, the parties' proceeds of which would be used for the payment of the Court's August 2015 Fee Orders well as an additional fee order pursuant to the Request.

16.    I believe that the Debtor filed his Chapter 11 petition on February 2, 2016, three days before the hearing scheduled for February 5, 2016 in the Dissolution Proceeding, to block the Family Court from the sale of the Bayview Property.

///

///

///

NICOLE GOLDMAN'S OPPOSITION TO DEBTOR IN POSSESSION'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. § 364 FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING AND DECLARATION OF NICOLE GOLDMAN IN SUPPORT THEREOF

17.     Based on Debtor's failure to pay the Support Orders, I have been meeting with Social Services because I can't care for our daughter with no financial support from the Debtor and meet my monthly expenses.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed at _Nashville_ , _TN_ , on the below date.

Dated: _3/10/16_                     _M. Goldman_
                                      NICOLE GOLDMAN

NICOLE GOLDMAN'S OPPOSITION TO DEBTOR IN POSSESSION'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. § 364 FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING AND DECLARATION OF NICOLE GOLDMAN IN SUPPORT THEREOF

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 11766 Wilshire Blvd., Ste. 1170, Los Angeles, CA 90025.  A true and correct copy of the foregoing document entitled (*specify*): **OPPOSITION OF DEBTOR TO MOTION OF NICOLE GOLDMAN AND JASMIN ISMAIL TO DISMISS, OR IN THE ALTERNATIVE, TO CONVERT DEBTOR'S CHAPTER 11 CASE; DECLARATION OF TODD GOLDMAN IN SUPPORT (Amended and refiled to correct hearing date)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On April 13, **2016**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Robin Ferguson**    pctcbk@taxcollect.com
- **Alan W Forsley**    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy.flores@flpllp.com
- **Michael S Kogan**    mkogan@koganlawfirm.com
- **Ron Maroko**    ron.maroko@usdoj.gov
- **Alan I Nahmias**    anahmias@mbnlawyers.com, jdale@mirmanbubman.com
- **Elaine Nguyen**    elaine@wsrlaw.net, jamie@wsrlaw.net;vinnet@ecf.inforuptcy.com
- **Russell H Rapoport**    rrapoport@mbnlawyers.com, aacosta@mbnlawyers.com
- **James R Selth**    jim@wsrlaw.net, jselth@yahoo.com;jamie@wsrlaw.net;vinnet@ecf.inforuptcy.com
- **Lisa Torres**    ltorres@gogglaw.com, mburke@gogglaw.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Daniel J Weintraub**    dan@wsrlaw.net, jamie@wsrlaw.net;vinnet@ecf.inforuptcy.com

**2.  SERVED BY UNITED STATES MAIL**:
On **N/A**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on April 13, **2016**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Personal Delivery to: Chambers of Hon. Barry Russell United States Bankruptcy Court, Los Angeles Division

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 13, 2016 | Jamie Barrios | /s/ Jamie Barrios |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**